## THE PEOPLE v. JAMES H. MOORE.

*How. Stat. secs. 9631–2—Authorizing the arrest of a pardoned convict, without warrant, for an alleged violation of the conditions of his pardon—And his trial without a preliminary examination—Are unconstitutional and void—Such convict must be arrested, held, and tried in same manner as other offenders—Pardoning power—Vested exclusively in Governor—Except in cases of treason, where he has suspended the execution of sentence and referred case to Legislature for its action—Court cannot suspend sentence indefinitely—Thus virtually granting a pardon.*

1. How. Stat. §§ 9631, 9632, authorizing the agent of the State prison, or the keeper of any other penal institution, to arrest and remand to prison, *without* warrant, a *pardoned* convict, when it comes to the knowledge of such officer that he has violated the conditions of his pardon, and providing for his trial in the circuit court *without* a preliminary examination, are *unconstitutional* and *void.*

2. A pardoned convict charged with having violated the conditions of his release must be *arrested*, held, and *tried* in the same manner as *other* offenders against the law.

3. The pardoning power is vested *exclusively* in the Governor by our constitution, except in case of *treason*, where that officer has *suspended* the execution of the *sentence* and referred the case to the Legislature for action.[1]

Error to Jackson. (Gridley, J.) Argued June 24, 1886. Decided July 21, 1886.

Respondent was convicted of violating the conditions of his pardon, under which he had been released from State prison. Reversed and respondent discharged. The facts are stated in the opinion.

*James C. Wood* and *Charles B. Wood*, for respondent.

*Moses Taggart*, Attorney General, for the People.

MORSE, J. The respondent, James H. Moore, was convicted of the crime of burglary in the recorder's court for the city of Detroit, October 31, 1882, and sentenced to imprisonment in the State prison at Jackson for the term of seven years. During his confinement there, and on the twenty-ninth day of October, 1885, Hon. Russell A. Alger, Governor of this State, under his hand and seal, commuted the sentence of said respondent to four years from the thirty-first day of October, 1882,—

"On condition that he do absolutely abstain from visiting places where intoxicating liquors are sold, from using intoxicating liquors as a beverage, and from associating with bad characters having a criminal reputation."

On the thirteenth day of January, 1886, the respondent was released from prison, having become, by said commutation, and his good behavior while confined, entitled to his release, under the laws of this State.

On the eighteenth of March, 1886, a police officer arrested the respondent, and handed him over to the warden of the

---

[1] See *People v. Felker*, 61 Mich. 110, 111 (note), as to power of court to *indefinitely* suspend sentence in a criminal case.

State prison, where he was confined until the twenty-eighth day of April, 1886, when he was brought into the circuit court for the county of Jackson, and arraigned upon an information filed against him by the prosecuting attorney of that county. He was then remanded to the prison, where he remained until the day of trial, May 10, 1886.

The officer who arrested him speaks of having a warrant, and making a return upon it, but no mention other than this statement is found in the record or on file in the county clerk's office at Jackson. If there was any process at all it must have been issued by some person having no right to issue it, or by some magistrate to whom it was never returned, or, if returned, never acted upon. The arrest, under the circumstances, was virtually without process, and at the mere order of the warden of the prison.

The respondent's counsel, in the court below, moved to quash the information for the reasons that there had been no preliminary examination before the filing of the same; that the respondent had had no opportunity until the day of trial to know the character of the witnesses against him; that the information was founded upon an unconstitutional statute, conflicting both with the Constitution of the United States and of the State of Michigan.

The motion was promptly overruled, and the trial proceeded, resulting in the conviction of the respondent, followed by a sentence committing him to the State prison for three years, as the balance of his unexpired term under the first commitment.

The pardoning power in this State is vested exclusively, by the constitution, in the Governor. It provides that—

" He may grant reprieves, commutations, and pardons after convictions, for all offenses except treason and cases of impeachment, upon such conditions, and with such restrictions and limitations, as he may think proper, subject to regulations provided by law relative to the manner of applying for pardons." Sec. 11, art. 5.

The Legislature, in 1861, added four sections, relative to conditional pardons, to chapter 170 of the Revised Statutes

of 1846, now being found in Howell's Statutes as sections numbered 9630, 9631, 9632, and 9633.

Section 9631 provides that the agent of the State prison, or the keeper of any other penal institution, may, when it comes to his knowledge that a pardoned convict has violated the conditions of his pardon, forthwith cause him to be arrested and detained according to the terms of his original sentence.

Section 9632 provides that such agent or keeper, arresting such convict, shall forthwith notify the prosecuting attorney for the county where such agent or keeper resides, who shall file an information before the circuit court next to be held in said county, " in the same manner as other informations are filed, so that it may be judically ascertained whether the condition of the pardon or remission of punishment has been broken by the convict."

It is also provided by the same section " that no examination of such convict need be had before any justice of the peace, or other committing magistrate, before the filing of such information."

The last section (9633), upon the admission of the convict, or finding of the jury, that the condition has been violated, authorizes his remanding and confinement for the unexpired term of his original sentence. If it appears to the court, by verdict of the jury or otherwise, that he has not broken the condition of his pardon, he shall be discharged.

Under this act of the Legislature the information in this cause was filed, charging the respondent, while being at large and out of the State prison under the commutation and discharge of sentence, with having, at the city of Jackson, on the eighteenth day of March, 1886, violated the conditions of said commutation by visiting places where intoxicating liquors were sold, drinking liquors as a beverage, and becoming intoxicated from such use of intoxicating liquors.

The question of the constitutionality of this proceeding is directly raised here.

Under the Constitution of the United States, and of our own State, no man can be deprived of his liberty without

due process of law. The Legislature of this State cannot grant a pardon or commute a sentence, except in the case of treason, where the Governor has suspended the execution of the sentence and referred the case to that body for action. Const. § 11, art. 5.

Nor has the Legislature power to abridge a pardon or commutation, or deprive a man of his liberty under it, except by constitutional methods.

When a person has been set at liberty under the pardon or the commutation of his sentence by the executive, he becomes once more a full citizen, clothed with all the rights, privileges, and prerogatives that belong to any other freeman. He cannot be sent out half free and half slave. He is not to be let out with a rope around his body, as it were, with one end in the hands of the warden, to be hauled back at the caprice of that officer. He must go out a free man, and remain a free man until he breaks the condition of his pardon. He must enjoy the blessings and benefits that belong to an American citizen until he has violated the law of his release. His character may be tarnished and his reputation soiled by his imprisonment, but his rights as a citizen are unimpaired. He is clothed, as he passes out of the prison door, with the same garb of freedom that was removed from him when he went in.

He has the right to his liberty the same as any other citizen, so long as he keeps the condition of his pardon, and he cannot be deprived of that liberty save in the mode prescribed by the constitution and laws of our State as applied to any other citizen. If the breaking of the condition is in the nature of a crime, or punished as such with penal consequences, that crime, or act punished as a crime, must be established as any other crime would be. He is presumptively innocent until proven guilty, and his guilt must be established under the due forms of law, and by the same processes applied to others. There can be no special legislation separating him, in his rights and privileges, from his fellows, and shackling some of his prerogatives.

As none under our institutions are entitled to special

privileges, so none can be shorn by special legislation of any portion of their rights and franchises as freemen. If a condition is imposed that he shall not do any thing or things, this does not hamper or abridge his rights or liberties until the condition is broken. And, in order to remand and confine him in prison again, the fact of the violation of such condition must be established by the due administration of the law, as in other cases of the violation of the penal statutes.

The authority conferred upon the agent of the State prison, or the keeper of any other penal institution, to arrest and detain such person in his prison or house of correction, without complaint or warrant, and to keep him there without bail, and without preliminary examination, as a convict, until the prosecuting attorney of the county may choose, when the next term of court opens, to file an information against him, cannot be tolerated or permitted under our constitution, and is repugnant to the spirit of our institutions.

By the operation of this statute the person pardoned and absolved from the penal consequences of his crime; we must presume for good cause, is not free upon his release. He is subject to the will of a master. The warden, or other official, can reach out his hand at any moment, and pull him back into prison, governed by no restrictions save the will of the officer. When the warden's hand is laid upon the released convict, he becomes his absolute servant and prisoner until the prosecuting attorney gets time or sees fit to move. This arbitrary power and authority over the liberty of another is possessed by no other officer in our government, in times of peace. It cannot lawfully exist in a free country.

This case illustrates within itself the utter wrong and injustice of such a proceeding. The respondent is arrested upon the eighteenth of March, without any lawful process, at the mere will of the warden of the prison, upon his suspicion, from hearsay, that the condition of his pardon has been broken; and is confined in the prison, without opportunity of giving bail or preparing for his defense, until the twenty-eighth of April, when he is informed against; then

further held there until the tenth of May, and tried, without, in fact, there being any evidence whatever, as will be seen hereafter, to legally authorize his arrest or conviction.

A man pardoned out of prison, or having his time shortened by commutation, presumably for good and substantial reasons to his credit, when thus released on condition, by this statute, is shorn of his rights to a speedy trial, or his privilege from arrest and confinement without due process of law, and made subject, as far as his liberty is concerned, for a longer or shorter period, to the mere will or whim of a prison official. He is not allowed even the same rights as the contumacious felon, who gains no good time, nor commutation, nor pardon, but who, when set free by the expiration of his sentence, goes out into the world again to enjoy and be protected in all the privileges and franchises that belong to any other citizen.

This statute violates the constitution of our State in many particulars. The person thus released can be arrested without due, or any, process of law. Secs. 26 and 32, art. 6.

He is denied counsel as a matter of right, as there is no provision for his defense until he gets into the circuit court, and until then the warden may keep him as he does any other inmate of the prison. Sec. 28, art. 6.

He is denied right to bail. Sec. 31, art. 6.

He is debarred of the right to a speedy trial. Sec. 28, art. 6.

He is subjected to cruel and unusual punishment by being confined in State prison as a felon, before trial or information filed against him. Sec. 28, art. 6.

The consequences of this act, if sustained, may not always be visited upon those who have been convicts. It is liable to be used against an innocent and unattainted man. Suppose the warden to be mistaken in the identity of a prisoner; and such a thing has happened not infrequently in criminal prosecutions. In such a case the citizen arrested would be confined, as a common felon, with felons, in the State or other prison, until the next meeting of the circuit court, which might not be for three months. He could neither give bail,

nor ask a preliminary examination before a magistrate to establish his innocence. He would be as completely at the mercy and under the will of the warden as the pardoned convict. The iniquity of such a statute is not to be measured in words. It is a menace against the personal liberty of the citizen, to be removed at once, when the attention of the Court is called to it.

The authorities are not overabundant as to the method of procedure and practice in cases of this kind.

In *Rex v. Miller*, reported in 1 Leach, 74, and 2 W. Bl. 797, the prisoner, who had violated the condition of his pardon, which was that he should transport himself out of the kingdom of Great Britain, and not return in seven years, was proceeded against by indictment for " being found at large in Great Britain, *without any lawful cause*, before the expiration of his term," and was tried before a jury upon that issue. But in *Rex v. Madan*, 1 Leach, 223, a convict who had returned to England, in violation of the condition of his pardon, was tried at the Old Bailey, without any indictment being preferred against him. He was apprehended, and committed to Newgate. The court, on the seventh day of December, 1781, ordered notice in writing to be given him to show cause the next day why execution should not be awarded against him on his former sentence. The following day, on being put to the bar, and the record of his former conviction being proved, not being prepared with witnesses for his defense, his case was continued until the January session, 1782, when he was remanded under his former sentence.

The question whether he was properly remanded was submitted to the twelve judges, but before the decision of these judges, by his Majesty's pleasure, he was transported for the term of his natural life, the original sentence being that of death.

Upon the authority of this last-named case the courts in South Carolina have held that a convict, pardoned upon condition that he would leave the state not to return, upon violating the condition, could be arrested without warrant, and

held under the original sentence. The method of procedure held valid there is to bring the accused before the court that originally passed sentence, the defendant having a right to show cause why sentence should not be passed upon him,— for instance, that he is not the same man; and if the judge is in doubt, he may call a jury to determine the question, or, in the language of the decisions, to aid him in the matter. *State v. Chancellor*, 1 Strob. 347; *Smith's Case*, 1 Bailey, 283; *Addington's Case*, 2 Id. 516.

It was held in *Kennedy's Case*, 135 Mass. 48, that the governor and council could legally order a pardoned convict, breaking the condition, to be remanded and confined for the unexpired term of his sentence, without notice to him, and without giving him an opportunity to be heard. In that case Kennedy had been pardoned upon the condition that if, before the expiration of his sentence, he should be convicted of any crime punishable with imprisonment, he should serve the remainder thereof. He was convicted of a crime, and, while in state's prison serving out his second term, and just before its expiration, the warden wrote a letter to the governor acquainting him of this fact. Thereupon the governor and council met, Kennedy having no notice of such meeting, and being in prison, and passed upon his case, and made an order that he be confined in the prison for the unexpired term of the first sentence, after the time of the second was ended.

This was done under a statute of that state which authorized them—

" To examine the case of such convict, and, if it appears by his own admission, or by evidence, that he has violated the conditions of his pardon, the governor, with the advice of the council, shall order the convict to be remanded, and confined for the unexpired term of his sentence."

This action was held valid, and the statute constitutional, on the ground that when the prisoner accepted the pardon he took it with notice of this statute, and it was one of the conditions upon which he accepted his liberty. In other words, he was held to have accepted a freedom that yet bound him to be arrested or held upon a letter from an official, upon

which the governor and council might act, without any notice to him or any opportunity to make defense, and which acceptance estopped him from any remedy or redress against the arbitrary or unjust action of the governor and council.

This strange doctrine probably would not have been asserted if the record of the prisoner's conviction of the second offense had not been before the governor and council. The court may have reasoned, but not in the written opinion, that Kennedy had been afforded one trial and defense as to the violation of the condition of his pardon, inasmuch as the trial of the second charge, and his conviction thereof, would also judicially determine that he had broken such condition.

But if it is sound doctrine, it must apply equally to cases like the one at bar, where the breaking of the condition has not been determined by any proper trial. It was also intimated in *Kennedy's Case* that the executive authority, to which the pardoning power was intrusted, might withdraw the pardon on account of the breach of the condition. This question is not involved here.

Certain it is, however, that the authority for the procedure in South Carolina, and the ruling of the Massachusetts supreme court in *Kennedy's Case*, cannot be followed in this State, under the plain provisions of our constitution ; nor do we think that courts or executives will ever be invested in our State with the power of remanding pardoned convicts back to prison for the alleged violation of the conditions of their pardon, without an arrest by due process of law, and a fair trial, with the same opportunities for defense that are afforded every other citizen when accused of crime.

In the opinion of Circuit Judge Edmonds, in *People v. Potter*, 1 Parker, Crim. R. 47, I find a letter from Judge Greene C. Bronson, written while he was attorney general of the state of New York, in which he says, in a case like the one under consideration :

" The practice you mention as having obtained in such cases of recommitting to the state's prison, without any warrant or adjudication, is, in my opinion, neither warranted by law nor a just regard to personal liberty."

Whatever may be the course of procedure in other states, a just regard for the personal liberty of the citizen, as protected and guaranteed by our constitution, compels us to declare this statute unconstitutional and void, in so far as it authorizes the warden, or other prison official, to arrest and remand to prison without warrant, or empowers a trial in the circuit court without preliminary examination before a magistrate.

The pardoned convict, alleged to have violated the condition of his release, must be arrested, held, and tried in the same manner as other offenders against the laws.

As has been before said, there was no evidence upon the trial lawfully warranting a verdict of guilty against Moore. There was no pretense that any one had ever seen him drink any intoxicating liquor, or been near enough to him to smell liquor in his breath.

One Prosser, who was an employe of a firm with which the warden of the prison was connected, in whose service he had been for nine years, testified that he saw the respondent drunk one day, as he supposed. He thought Moore was intoxicated because he was in a cutter with two ladies, and they pulled him into the cutter,—"kind of pulled him over to them; that is all that I saw." On cross-examination it turned out that witness was standing on the corner of a street, and respondent, with two ladies in the cutter, "came round the corner at a pretty good speed; he was a little heavier than the rest, leaned over, and it swung the cutter round."

Marcus Spencer, a policeman, gave in evidence that he saw Moore intoxicated once in a street car, and that "he seemed to want to occupy both sides of the car,—his feet on one side, and part of his body on the other." A lady, his wife, was with him at the time. Moore did not speak to witness, and witness did not hear him say much; passed right in front of, but did not get his breath, nor did he stagger; did not know who he was until he got to headquarters, and inquired. His being intoxicated on these two occasions was denied by Moore and the ladies who were with him.

This was all the evidence of the use of liquor by Moore

adduced on the part of the people. On the part of the defense several persons were sworn, among them two barbers, who were in the habit of shaving him,—people with whom he dealt daily and weekly,—and his wife and himself, to the effect that he did not drink, nor show in any way the effects of liquor.

It is evident, from the record, that the jury took no stock in the testimony that he drank liquor as a beverage, or that he had been intoxicated since his release from prison; as, after they had been out for some time, they came into court, and being asked if they had agreed, answered: "We have not; we have a question to ask."

A juror then asked the following question:

"Under the Governor's commutation, had the party a right to visit saloons where liquors are sold, on business? For instance, he was working for an ice company; had he the right to enter said saloon to collect bills?"

Other questions were propounded by other jurors, showing that they were not satisfied that he had been drinking since his release, but, under the charge of the court, were wrestling with the question of his visiting saloons. And, if it had not been for the erroneous charge of the court in that particular, it is plain that the defendant would have been acquitted and discharged.

It was shown and admitted that he went to the saloon of a Mrs. Dibble, and went up stairs to her room to write letters and transact other business for her, he being a good penman and fair business man, as admitted by the warden of the prison. The testimony was that while there he neither drank, nor solicited a drink. He was not shown to have visited or entered any other places where liquors were sold.

The court instructed the jury, in substance, that, under the Governor's condition, if he had entered a place where liquor was sold, knowing it was there sold, he had violated the condition of his commutation or pardon; and that it made no difference whether such visit was for social or business purposes, or for any other reason,—the breach of the condition would be the same in either case.

We do not think that the Governor intended to use the word "visit" in the broad sense interpreted by the circuit judge. At least, we cannot so construe it. Under the construction given this word in the court below, Moore would have been precluded from entering or passing through a saloon for any purpose, even to assist or aid a friend, or his own kin, or to collect a debt, or for any other legitimate business purpose. It seems to us that the meaning intended by the Governor—at any rate, it is the most reasonable view to take —was to prevent respondent from resorting to saloons for the purposes of drink, or any social recreation or amusement, where he might, by remaining there, be tempted to indulge his appetite.

The judge should have directed an acquittal, upon the merits of the case, upon the trial, as the opinion of the two witnesses as to the intoxication of Moore was evidently based upon mere conjecture, and, in the light of all the other evidence, was entirely worthless, and inadequate to convict upon that charge. And no evidence was adduced showing that he had visited places where intoxicating liquors were sold, in the sense of the manifest meaning of the term as used in the commutation of sentence.

For these reasons we ordered the discharge of the respondent upon the hearing here, and reversed and vacated the judgment against him.

CAMPBELL, C. J., concurred. CHAMPLIN and SHERWOOD, JJ., concurred in the result.