STATE *ex rel.* THOMAS O'CONNOR *vs.* HENRY WOLFER, Warden.

Argued April 6, 1893. Decided April 27, 1893.

**Recommitment of a Convict Conditionally Pardoned.**

A convict who has received and accepted a conditional pardon cannot be arrested and remanded to suffer his original sentence because of an alleged nonperformance of the condition, upon the mere order of the governor. He is entitled to a hearing before the court in which he was convicted, (or some superior court of criminal jurisdiction,) and an opportunity to show that he has performed the condition of his pardon, or that he has a legal excuse for not having done so.

**Same—Trial by Jury.**

On such hearing the court may, in its discretion, if in doubt as to the facts, take the verdict of a jury, but the party is not entitled to a jury trial as a matter of right, except upon the question whether he is the same person who was convicted, if he pleads that he is not.

Original petition of Thomas O'Connor made February 18, 1893, for a writ of *Habeas Corpus* directed to Henry Wolfer, Warden of the State Prison at Stillwater, to have the body of the petitioner, together with the authority for his imprisonment before this court, to do and receive what shall be considered in the premises.

The petitioner was on December 2, 1880, convicted in the District Court of Le Sueur County of the crime of murder in the first degree, and sentenced to be imprisoned in the State Prison at Stillwater during the term of his natural life. A commitment was on the same day issued, and he was conveyed to said prison and there confined. On October 1, 1890, William R. Merriam, then Governor of this State, upon the petition of the Judge, prosecuting attorney, and nine of the jury, and a large number of the citizens of that county, granted a full pardon to the petitioner, upon the condition therein expressed that he take up his residence outside the State, and maintain the same outside the State during the balance of his life; otherwise the pardon to become null and void and be held for naught.

On the next day the petitioner was released, and he went immediately to St. Paul, and by telegram notified his wife, at Madison Lake, in Blue Earth county, of his pardon, and directed her to dispose of his farm and personal property, and meet him at St. Paul, and go with him to Detroit, Michigan. She sold the property, and

on October 10, 1890, started for St. Paul to meet him, but, as she was about to take the train, she was stricken with paralysis. He was notified of this fact by telegram and went to her, procured a physician and medicine, and then concealed himself in the vicinity to avoid the public, until he could take a train to leave the State. On Monday morning, October 13, 1890, as he was going to the station to take the train, he was arrested without warrant, and conveyed to the county jail of Le Sueur county, and there kept in confinement until October 16, 1890. On that day the Governor issued his warrant to the said Warden reciting the conviction and conditional pardon of the petitioner, and stating that he had not left the State, and was then in the custody of the Sheriff of Le Sueur county, and declaring the pardon to be null and void, and directing the Warden to retake the petitioner wherever he might be found, and return him to the State Prison, and there detain him in custody, to be dealt with in accordance with the terms of his original sentence and commitment.

Under this warrant the petitioner was again taken to the State Prison, and there confined. On January 13, 1893, he presented his petition to *Hon. W. C. Williston,* one of the Judges of the District Court of Washington County, setting forth these facts, and praying for a writ of *Habeas Corpus.* The writ was granted, and he was taken before the Judge, and proofs were submitted. On February 13, 1893, that Judge made his decision remanding the petitioner to the custody of the Warden. On February 18, 1893, petition was presented to this court, setting forth these facts, and praying that a writ of *Habeas Corpus* issue. The application was ordered to be heard on April 6, 1893, before this court.

*H. H. Gillen* and *J. C. Nethaway,* for petitioner.

There are but two questions involved in this application: First. Had the conditions of the pardon been violated at the time the petitioner was apprehended? Second. Being a conditional pardon, had the Governor or authorities the right to recommit the petitioner to the custody of the Warden of the prison without giving him a trial or hearing before the court that sentenced him, or a court of superior jurisdiction, that he might have an opportunity to show that the conditions of his pardon had not been violated?

Sickness is an excuse for not complying with the conditions of the pardon. *Rex* v. *Thorpe*, 1 Leach, (4th Ed.) 396, and note; *State* v. *Smith*, 1 Bailey's L. 283. As to the second question—*Millers' Case*, 1 Leach, 74; *Madan's Case*, 1 Leach, 223; *Aickles' Case*, 1 Leach, 303; *Sir Walter Rawleigh's Case*, Cro. Jac. 495; *Ratcliffe Case*, Foster, 40; *Rex* v. *Rogers*, 3 Bur. 1810; *State* v. *Addington*, 2 Bailey, 516; *State* v. *Fuller*, 1 McCord, 178; *State* v. *Chancellor*, 1 Strobh. 347; *State* v. *Barns*, 32 S. C. 14; *People* v. *Potter*, 1 Park. Cr. Rep. 47; *People* v. *James*, 2 Cai. 57.

A convict, having received a conditional pardon, cannot be recommitted without a hearing in a court of competent jurisdiction, as to whether he had violated the conditions of his pardon. *People* v. *Moore*, 62 Mich. 496; *People* v. *Cummings*, 88 Mich. 249. Blackstone gives a form of petition to the court to remand after release from original sentence. 2 Cooley's Blackstone, appendix; 1 Bishop, Crim. Pro. §§ 1383-1384. On careful examination the following cases will be found not in conflict: *Ex parte Marks*, 64 Cal. 29; *Arthur* v. *Craig*, 48 Iowa, 264; *Kennedy's Case*, 135 Mass. 48.

*H. W. Childs*, Attorney General for the State.

The Governor may annex to a pardon any condition, whether subsequent or precedent, not forbidden by law. And it lies upon the grantee to perform the condition. If the condition is not performed, the original sentence remains in full vigor and may be carried into effect. *Cole's Case*, Moore, 466; *State* v. *Smith*, 1 Bailey, 283; *Addington's Case*, 2 Id. 516; *People* v. *Potter*, 1 Park. Cr. Rep. 47; *United States* v. *Wilson*, 7 Pet. 150; *In re Greathouse*, 4 Saw. 489; *State* v. *Chancellor*, 1 Strobh. 347.

The proper steps have been taken to enforce the original sentence. It is admitted that the prisoner is the same person, and it is further admitted that, though pardoned and released on the 1st of October, 1890, he was still in the State on the 13th day of October, 1890.

MITCHELL, J. As the respondent traversed none of relator's allegations of fact, the petition for the writ must, for the purposes of this hearing, be taken as true. Therefore no statement of facts other than a reference to this petition is necessary.

That the pardon granted to relator was conditional, and that the condition was a valid one, cannot admit of doubt. The power to grant conditional pardons is conceded. The statute, 1878 G. S. ch. 119, which is but declaratory of the common law, expressly so provides.

A pardon being wholly a matter of mercy, the governor may impose any condition that he pleases, at least provided it is neither immoral, impossible, nor illegal. The condition in this case, to wit, that the prisoner "take up his residence out of the state, and maintain the same outside of the state during the balance of his life," was neither immoral, impossible, nor illegal. The fact that this condition precedes the operative part of the pardon, which, if taken by itself, would be unconditional, is unimportant. Taking the whole instrument together, it is perfectly evident that the intention was that the pardon should be subject to this condition.

It appears that about a week after the pardon had been issued, and the relator discharged, the governor, without giving him any opportunity to be heard, issued his order to the warden of the penitentiary by which, after assuming to recite the condition of the pardon and the nonperformance of it by the relator, he declared the pardon null and void, and directed the warden to arrest the relator, and return him to the state prison, to be there kept in confinement, in accordance with the judgment of the court before which he had been convicted; that upon the authority of this order alone the relator was shortly afterwards arrested, and without any trial or hearing in court or otherwise, and without being given any opportunity to be heard as to whether he had violated the conditions of his pardon, was returned to the state prison, where he is still confined.

The main question, and the one which presents itself at the threshold of this case, is whether a person who has been discharged on a conditional pardon can be recommitted to the state prison without any hearing or adjudication, upon the mere order of the governor, who has assumed to determine *ex parte* that the condition of the pardon has not been performed. It seems to us that such a course is warranted neither by law nor by a just regard for the personal liberty of the citizen. It is, of course, well settled that if a person be pardoned upon a condition, either precedent or subsequent, which he neglects to

perform, the pardon is void, and he may be remanded to suffer his original sentence; but upon the question whether he has neglected to perform the condition, and is therefore liable to be thus remanded, he is entitled to a hearing and adjudication. As a pardon is wholly a matter of mercy, we are not prepared to hold that the legislature may not provide that in case of a conditional pardon the governor may, even without giving the person an opportunity to be heard, determine whether the condition has been violated, and, if he determines that it has, remand him to the state prison; and it may be that, even in the absence of any statute, the governor would have the right to insert such a provision or condition in the pardon itself, for it might well be argued that the statute in the one case, and the express provision of the instrument itself in the other, constituted a condition to which the prisoner voluntarily subjected himself by the acceptance of the pardon. See *Kennedy's Case,* 135 Mass. 48, and *Arthur v. Craig,* 48 Iowa, 264.

But the pardon in this case contained no such condition, and our statute is entirely silent as to the mode of procedure. The procedure, therefore, in such cases, is governed by the rules of the common law. We have carefully examined all the cases within our reach, both English and American, and find that, except where otherwise provided by statute, (as in Massachusetts,) the uniform practice from the earliest date has been that, upon complaint that the person has not performed the condition of his pardon, a warrant is issued, upon which he is arrested, and committed to jail until he can be brought before the court for a hearing; that thereupon an order, rule, or some such process, (the precise form of which is not very material,) issued by the court in which he was convicted, (or some superior court of criminal jurisdiction,) he is brought before the court to show cause why execution should not be awarded against him on his original sentence. The record of his conviction is then produced. The first thing is that it must appear that he is the same person. If he pleads that he is not, a venire to try that fact is awarded. If the jury find, or if he confess, that he is the same person, then there may be other questions, (according to the nature of the condition of the pardon,) for the consideration of the court, as, for example, in this case, whether the prisoner had had a reasonable time within which to remove from

the state, or whether he had been necessarily delayed in doing so by reason of the sickness of his wife. On all such and similar matters touching the question whether he had failed to perform the condition of his pardon the prisoner is entitled to be heard, just as he was entitled to be heard why sentence should not be passed on him when he was originally brought before the bar of the court for sentence after verdict. It is competent for the prisoner in such cases to present any facts constituting an excuse for nonperformance of the strict terms of the condition, as, for example, extreme poverty or sickness; and, if the court is of the opinion that such impediments amount to a lawful excuse, he should be discharged. *Aickles' Case,* 1 Leach, Cr. Cas. 390; *Thorpe's Case,* Id. 396, note. If the court is in doubt in regard to the facts which rest *in pais,* it has been sometimes the practice to take the verdict of a jury. This was done in *Thorpe's Case, supra.* But, while we have no doubt of the right of the court to do this, we are of opinion that the prisoner is not entitled to the verdict of the jury as a matter of right. According to the course of common-law practice the only issue that must be tried by a jury is whether the prisoner is the same person who was convicted. The reason for this is that otherwise a person might be remanded to suffer punishment who has never been tried by a jury. But, if it be found or admitted that the prisoner is the same person, no other or greater formalities are required in reiterating the sentence, and returning him to imprisonment under it, than were required when he was brought up for original sentence.

The contention of relator's counsel, based principally upon the authority of *People* v. *Moore,* 62 Mich. 496, (29 N. W. Rep. 80,) that a pardoned convict, charged with having violated the conditions of his pardon, must be arrested and tried in the same manner—that is, upon an indictment and by a jury—as other offenders against the law, is, in our judgment, not only contrary to the course of the common law from the earliest times, but proceeds upon an entirely erroneous theory as to the *status* of a person released upon a conditional pardon, and as to the nature of proceedings to remand him to imprisonment upon nonperformance of its conditions. If the violation of the conditions was a crime, as it is in certain cases in some jurisdictions, and if the person was

charged with *that* crime, of course he would have to be tried in the same manner as those charged with any other offense; and, if a second or new conviction of the original offense was necessary, the same thing would be true. But the nonperformance of the condition of a pardon is not an offense. Neither is there any second trial and conviction of the prisoner for the original offense. He had been already tried and convicted of the crime of which he was conditionally pardoned, and, if he violates the condition, the pardon is altogether void, and he is remanded to suffer his original, and not a new, sentence for the crime (and not some other) of which he had been already convicted. Without multiplying authorities we merely refer, in support of our views, to *People* v. *Potter*, 1 Parker, Crim. R. 47, where the earlier cases, both English and American, are quite extensively cited and commented upon.

Counsel, however, makes the point that upon relator's own showing in his petition he had violated the condition of his pardon, and therefore, even if the means by which he was returned to the state prison were unlawful, still he ought to be remanded to the custody of the warden.

We are not prepared to say that, where a person who has been thus returned to prison in an illegal manner sues out a writ of *habeas corpus* before a court of competent original criminal jurisdiction, such court may not, on the return to the writ, hear and determine the question whether the condition of the pardon had been performed, and, if the fact be adjudicated adversely to the prisoner, remand him to suffer his original sentence.

But this is not a court of original criminal jurisdiction, and will not enter into the consideration of any such questions, but will merely inquire whether the relator's present detention is by authority of law, and, if it is not, order his discharge. Of course, such discharge is no bar to the institution of further proceedings in behalf of the state in the proper court, in the manner already indicated, to have the party remanded to prison. We will also add that we do not think that it necessarily follows, by any means, from the allegations of relator's petition, that he had failed to perform the condition of his pardon. The governor's order recites that the condition was that he should immediately leave the state. This is incorrect. It was that he should "take up his residence

out of the state," etc.    No time being specified, he had what would
be, under all the circumstances, a reasonable time.    We do not
care to enter into any extended discussion of the facts, but we sug-
gest that it appears that he had a family in a distant part of the
state; also that one of the expressed reasons for granting the par-
don was that he might care for his family, who, it must have been
expected, would either accompany or shortly follow him to his new
residence; also that he had some property to be disposed of; fur-
ther, that while he and his family were preparing to leave the
state, and were about ready to start, his wife was suddenly taken
dangerously ill, which further delayed his intended departure.    In
view of all these facts it is at least an open question whether more
than a reasonable time for leaving the state had elapsed, and if
so, whether he had a lawful excuse for not leaving sooner.

It is ordered that the relator be discharged from custody.

VANDERBURGH, J., absent, took no part.

(Opinion published 54 N. W. Rep. 1065.)