## Commonwealth ex rel. Meredith, Atty. Gen., v. Hall, County Judge.

March 24, 1939.

HUBERT MEREDITH, Attorney General, and JESSE K. LEWIS and WILLIAM NEILL, Assistant Attorneys General, for petitioner.

LESLIE W. MORRIS, MARION RIDER and J. BALLARD CLARK for respondent.

OPINION OF THE COURT BY JUDGE STITES—Granting writ.

In April, 1934, Lee Fleenor was convicted of voluntary manslaughter, and in November of the same year began to serve his sentence. On December 4, 1935, Governor Laffoon granted Fleenor, together with a number of others, a conditional pardon which was accepted. On December 10, 1938, Acting Governor Edwin C. Dawson revoked the pardon as to Fleenor by an executive order and he was arrested and returned to the Reformatory. He was not given an opportunity to be heard nor any notice prior to the revocation of the pardon or his arrest. Fleenor filed a petition for a writ of habeas corpus before the respondent, James Hall, judge of the Oldham County Court, alleging that the conditional pardon granted him does not reserve to the Governor power to determine a violation of the conditions prescribed and that his present detention is therefore unlawful. He asserted that the order of revocation, without a judicial determination that he had violated the terms of the pardon, constitutes a denial to him of due process of law. The Commonwealth, on relation of the Attorney General, thereupon filed this petition for a writ of prohibition to stop the respondent from proceeding further upon the application for a writ of habeas corpus. A temporary writ of prohibition was granted and the case is now before us on the application of the Commonwealth to make the writ permanent and on the demurrer of the respondent to the petition. The conditions of the pardon were:

"First, that the said named persons, and each

of them, will, until the expiration dates of the sentences which they are now serving, conduct themselves as useful, upright and law-abiding citizens of the Commonwealth of Kentucky; and provided that if any of them shall fail to so conduct themselves for said period, those so failing may, by executive order made and entered upon the Executive Journal, be re-arrested and re-confined in either of the two named penal institutions of the Commonwealth of Kentucky and be required to serve out the full unexpired terms of their respective sentences.

"Second, that if any person granted executive clemency herein by this executive order shall, before the date on which his sentence would have expired, be convicted of a felony in any of the courts of this Commonwealth, the pardon hereby granted said person shall be null and void and of no effect, and said person shall be subject to arrest and shall be required to serve the unexpired portion of the sentence for which he is now incarcerated.

"Third, that if the persons hereinabove named conduct themselves as law-abiding citizens and violate none of the conditions of this executive order and of this conditional pardon, then they, and each of them, shall on the dates shown herein as the dates when their respective terms would have expired had they remained in prison be granted a full and free pardon and restored to full citizenship, and all the rights and privileges thereof; and they and each of them shall be privileged thereafter to exercise and enjoy citizenship as other citizens, provided, of course, they do not violate any of the conditions of this conditional pardon, and that they do not violate any of the conditions upon which this conditional pardon is granted."

There is no statutory provision regulating or prohibiting the granting of conditional pardons in Kentucky and we are left, therefore, simply with the rules of the common law in this connection. It seems to be held universally that the power given to the executive to grant a pardon includes the right to annex any conditions, whether precedent or subsequent, so long as they are not illegal, immoral, or impossible of performance. Ex parte Davenport, 110 Tex. Cr. R. 326, 7 S. W. (2d) 589, 60 A. L. R. 1403, and note.

"Where a pardon is granted upon any condition subsequent that is not immoral, illegal, or impossible of performance, and is accepted by the convict upon those terms, for breach of the condition or conditions at any time thereafter the pardoned prisoner may be lawfully arrested and required to serve out the unexpired portion of his suspended, but still potent, sentence." Crooks v. Sanders, 123 S. C. 28, 115 S. E. 760, 761, 28 A. L. R. 940. Compare Commonwealth v. Minor, Judge, 195 Ky. 103, 241 S. W. 856.

The rule is generally recognized that the executive may insert an express reservation in the pardon of a right of summary revocation without notice to the person affected. In the absence of this reservation, the holder of the pardon is entitled to a judicial determination of the question whether the conditions of the pardon have been violated before it can be effectually revoked. Thus, in State ex rel. O'Connor v. Wolfer, 53 Minn. 135, 54 N. W. 1065, 1066, 19 L. R. A. 783, 39 Am. St. Rep. 582, 9 Am. Crim. Rep. 487, the court said:

"The main question, and the one which presents itself at the threshold of this case, is whether a person who has been discharged on a conditional pardon can be recommitted to the state prison without any hearing or adjudication, upon the mere order of the governor, who has assumed to determine ex parte that the condition of the pardon has not been performed. It seems to us that such a course is warranted neither by law nor by a just regard for the personal liberty of the citizen. * * * We are not prepared to hold that the legislature may not provide that in case of a conditional pardon the governor may, even without giving the person an opportunity to be heard, determine whether the condition has been violated, and, if he determines that it has, remand him to the state prison; and it may be that, even in the absence of any statute, the governor would have the right to insert such a provision or condition in the pardon itself."

There is no serious disagreement between petitioner and respondent concerning the rules of law to be applied. In the final analysis, we are concerned solely with the question of the construction to be placed on the particular words of the Governor in the conditions of

the pardon quoted above. Did he intend thereby to reserve to himself or his successors, the power to revoke the pardon upon his own ex parte consideration, without a judicial determination of the violation of the conditions or without himself granting to the holder of the pardon an opportunity to be heard?

In Ex parte Frazier, 91 Tex. Cr. R. 475, 239 S. W. 972, 973, a situation was presented on all fours with the case before us. In. determining the proper construction to be placed upon the terms of the conditional pardon there involved, the court said:

"Appellant claimed—and here asserts—his right to a judicial ascertainment, or at least a hearing before the Governor, upon the question as to whether he had violated the conditions of his pardon. The decision of this proposition turns wholly on the terms of the grant of pardon as offered to him by the Governor, and accepted by appellant. Of necessity this is true. Appellant was a convict, held in custody by constituted authority, under sentence imposed by the courts. The Governor alone could grant him relief from his situation, and, the relief being one of grace and not constraint, the grantor could impose therein such conditions as he saw fit, within bounds of legality and morality. Appellant was not compelled to accept any pardon when offered, but, if one be tendered with conditions and he did accept, the conditions became alike binding on both grantor and grantee. It seems to be without possible dispute that there may be a stipulation in such grant as to who or what authority may be looked to to decide if any conditions imposed, be violated; and, if there be such stipulations, this part of the grant is equally binding upon both parties with any other. In the instant case appellant accepted a pardon with conditions, and containing a stipulation as to who should decide when the conditions were violated; said stipulation being in these words:

"'If the said Frazier is guilty of any misconduct or violation of the laws of this state, or there arises any other good and sufficient reason in the opinion of the Governor justifying him in doing so, this pardon is subject to be revoked at the Governor's discretion.'

"It seems to us that this recital makes it plain that the Governor was agreed upon by the parties to the grant, as the sole arbiter when and what should be held a termination of the grant. Of what use or avail would a court hearing or judgment be, when it is agreed upon and written into the document as decisive that whatever in the Governor's opinion justifies him shall be ground for revocation. There is nothing in the terms of the grant which binds the Governor to hear testimony pro and con, or which points out the route he must take in arriving at a conclusion that the grantee had violated the law or been guilty of misconduct, or done any other thing deemed of such character by the Chief Executive as to merit the revocation."

The Governor expressly found and recited, in the executive order revoking Fleenor's pardon, that the conditions of the pardon had been violated. It is not for the courts to examine the basis of his finding. Under the terms of the pardon, he had a right to make this determination and to act upon it. The pardon provides that it should be revoked by an order on the Executive Journal—not by the judgment of a court. It furthermore provides that the order of revocation is the basis for the re-arrest. Plainly, it was contemplated that the revocation might precede in time the notice to Fleenor and it follows that it must necessarily have been intended both by the Governor and the convict, accepting the pardon, that it might be revoked upon an ex parte finding. Any other construction would involve the absurd conclusion that Fleenor should be notified of the intention to revoke his pardon before he was apprehended. Certainly such an "opportunity to be heard" would be construed by the ordinary convict as an opportunity to absent himself as far as possible from the jurisdiction of the revoking authority. There is no violation of "due process" involved. Fleenor was at large by executive clemency which he had accepted on the conditions set out in the pardon. One of those conditions was the reservation of the right to revoke the pardon by an order entered upon the Executive Journal. When that order was entered Fleenor was in no better situation than an escaped convict without documentary evidence of his right to freedom and with an unexpired sentence hanging over him.

It is urged on behalf of Fleenor that the proper procedure is thus outlined in 20 R. C. L. 574:

> "The established practice at common law and in the American states, in the absence of statutory regulation and in the absence from the pardon itself of express stipulations for that purpose, is for some court of general criminal jurisdiction upon having its attention called, by affidavit or otherwise, to the fact that a pardoned convict has violated, or failed to comply with, the condition or conditions of his pardon, to issue a rule, reciting the original judgment of conviction and sentence, the pardon and its conditions, and the alleged violation of, or noncompliance with, the condition or conditions. thereof, and requiring the sheriff. to arrest the convict and bring him before the court to show cause, if any he can, why the original sentence imposed upon him should not be executed."

Plainly, the procedure thus suggested might be proper in a case where the pardon is silent as to the method of revocation as, for example, under the second condition in Fleenor's pardon. It is idle to assume that the parties to the pardon here contemplated under the first condition that the convict should be arrested and retried before a court, and the violation of the pardon then certified to the Governor for him to act or not to act thereon as he should see fit. This construction would entirely ignore the proposition that the pardon itself provides that the revocation should come first and the arrest should then follow. It is plain that the method of revocation—by executive order—contemplated that it was an executive power to determine violations that was reserved and that the executive determination to revoke might be based upon an ex parte consideration of the question. No other construction can give full effect to the words used.

We conclude, therefore, that the method of revocation followed was proper under the terms of the pardon and the temporary writ of prohibition is therefore made permanent.

Whole court sitting.