**FLEENOR v. HAMMOND, Superintendent of Kentucky State Reformatory.**

No. 8446.

Circuit Court of Appeals, Sixth Circuit. January 13, 1941.

Leslie W. Morris, of Frankfort, Ky. (Leslie W. Morris and Marion Rider, both of Frankfort, Ky., on the brief), for appellant.

W. Owen Keller, of Frankfort, Ky. (Hubert Meredith and W. Owen Keller, both of Frankfort, Ky., on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

The appellant, by petition for a writ of habeas corpus, assails the constitutional validity of his confinement in the Kentucky State Reformatory upon the revocation of a conditional pardon granted to him by the Governor. The District Judge, though concluding that the appellant's constitutional rights had been invaded, dismissed the writ but issued a certificate of probable cause to permit decision by us following the precedent adopted by his predecessor to which we gave approval in Jones v. Commonwealth of Kentucky, 6 Cir., 97 F.2d 335.

The facts upon which the petitioner relies, are not in controversy. He had been convicted in April, 1934, of voluntary manslaughter and sentenced in November of that year, to a term of 15 years in the State Reformatory. On December 4, 1934, Laffoon, the then Governor of Kentucky, by an executive order, granted to the petitioner and others a pardon on the condition that the persons named therein would "until the expiration dates of the sentences which they are now serving, conduct themselves as useful, upright and law-abiding citizens of the Commonwealth of Kentucky; and provided that if any of them shall fail to so conduct themselves for said period, those so failing may, by executive order made and entered upon the Executive Journal, be re-arrested and re-confined in either of the two named penal institutions of the Commonwealth of Kentucky, and be required to serve out the full unexpired terms of their respective sentences." The pardon also provided that if any of the persons therein granted clemency should be convicted of a felony, it was to become null and void, and if they "conduct themselves as law-abiding citizens and violate none of the conditions of this executive order and of this conditional pardon, then they, and each of them, shall on the dates shown herein as the dates when their respective terms would have expired had they remained in prison, be granted a full and free pardon and restored to full citizenship, and all the rights and privileges thereof; * * *" The petitioner accepted the pardon and on December 4, 1935, was released from the reformatory.

On December 10, 1938, Edwin C. Dawson, then Acting Governor of Kentucky, entered an executive order reading in part as follows:

"Whereas the said Lee Fleenor has heretofore and since the issual of said conditional pardon flagrantly, frequently, openly, willfully, and knowingly violated the conditions subsequent of said pardon, as enumerated above, and is now conducting himself in a manner violative of the conditions above, all of which is known to A. B. Chandler, Governor, and

"Whereas the undersigned governor of the Commonwealth of Kentucky is of the opinion that said conditional pardon should be, and the same is hereby revoked and held for naught, and the said Lee Fleenor should not be permitted to further enjoy the privileges provided for under the said conditional pardon;

"Now, Therefore, it is ordered that the said conditional pardon · granted on the 4th day of December, 1935, by Ruby Laffoon, then Governor, be revoked, set aside, canceled and held for naught insofar as the same pertains to Lee Fleenor of Harlan County, Kentucky."

The executive order then directed that Fleenor be re-arrested and returned to the reformatory to serve out the remainder of his 15-year sentence.

The order of the Acting Governor was entered without notice to the petitioner, and without an opportunity afforded him to be heard. Following its entry he was summarily arrested and returned to the custody of the appellee where he still remains. On January 24, 1939, the petitioner instituted habeas corpus proceedings in the Oldham County Court of Kentucky, but before the petition could be heard the Attorney General of the Commonwealth sought and obtained a writ of prohibition from the Court of Appeals of Kentucky, staying the County Court from proceeding further with the matter. On March 24, 1939, the Court of Appeals announced its decision, making the stay permanent and holding the petitioner's confinement to be under the circumstances not in denial of due process of law. Commonwealth of Kentucky v. Hall, County Judge, 277 Ky. 612, 126 S.W.2d 1056.

The petitioner thereupon filed his application for a writ of habeas corpus in the United States District Court, under the provisions of 28 U.S.C.A. §§ 452 and 453, alleging that the summary revocation of his pardon without notice and without hearing, and his arrest and confinement, constituted denial to him of due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States, with the result we have indicated.

There is no statutory provision regulating or prohibiting the granting of conditional pardons in Kentucky. The Court of Appeals, upon an examination of state authority declaratory of the common law, Ex parte Davenport, 110 Tex.Cr.R. 326, 7 S.W.2d 589, 60 A.L.R. 1403, concluded that the power given to the executive· by the Constitution of the State to grant a pardon, includes the right to annex any conditions precedent or subsequent that are not illegal, immoral or impossible of performance, and that there is a generally recognized rule that the executive may insert in the pardon an express reservation of a right of summary revocation without notice to the person affected, though in the absence of this reservation the holder of the pardon is entitled to a judicial determination of the question whether the conditions of the pardon have been violated, before it can be effectually revoked, State ex rel. O'Connor v. Wolfer, 53 Minn. 135, 54 N.W. 1065, 19 L.R.A. 783, 39 Am. St.Rep. 582. The court then proceeded to construe the provisions of the pardon granted to Fleenor. It found that by its terms it might be revoked by an order on the Executive Journal, without requiring the judgment of a court, and that revocation was the basis for a rearrest. Therefore, since it was contemplated that revocation might precede notice in time, it must necessarily have been intended both by the Governor and the convict, that it might be revoked upon an ex parte finding. No violation of due process was therefore involved. Fleenor, being at large by virtue of executive clemency accepted on the condition that power to withdraw it was reserved solely to the executive, could not complain of its exercise without notice or hearing.

The District Court was unable to agree with this interpretation of the terms of the pardon. Assuming that the phrasing used gave the Governor power to make findings, it was unable to derive therefrom any express reservation of power to make such findings without a hearing. It pointed to the dangers inherent in ex parte proceedings, in hearsay testimony or that of unsworn, partisan or interested witnesses, and expressed the view that, in the absence of clearly and unambiguously reserved power to the chief executive to re-

voke the pardon without a hearing because of its alleged violation, such arbitrary revocation could not be made. The writ should be granted were it not for the fact that the highest court of the state had denied it upon a similar showing. Constrained by the rule announced in United States v. Tyler, 269 U.S. 13, 46 S.Ct. 1, 70 L.Ed. 138, that the due and orderly administration of justice in a state court is not to be interfered with by the courts of the United States, save in rare cases where exceptional circumstances of peculiar urgency are shown to exist, and failing to find such circumstances the District Judge followed the practice approved in Jones v. Commonwealth, supra, dismissed the writ, and issued a certificate of probable cause as provided by 28 U.S.C.A. § 466.

■■■■ The Court of Appeals of Kentucky, having declared it to be the law that in the absence of statutory regulation a pardon may be granted upon condition that it may be revoked summarily by the Governor upon an ex parte consideration of an alleged breach of conditions therein contained, we must accept its decision as declaratory of the law of that state. The court having construed the pardon to contain an express reservation of power to summarily revoke, we must accept that construction as likewise authoritative in Kentucky. The question before us, therefore, is not whether the Court of Appeals of Kentucky correctly applied the common law of that state or correctly interpreted the terms of the pardon, but whether summary revocation of a pardon, without a hearing upon the question whether its conditions had been broken, is an impairment of the rights of the petitioner reserved to him by the Fourteenth Amendment to the Constitution of the United States, and upon that question we are not bound by the law of Kentucky, though constrained by our own sensitiveness to the extraordinary nature of the writ applied for, the caution that should be exercised in granting it where the petitioner has been denied relief by the courts of the state, and by admonitions of controlling authority that the power to issue a writ of habeas corpus to inquire into the cause of detention of anyone held in custody by the authority of a state court in alleged violation of the Constitution, laws or treaties of the United States, is not unqualified but is to be exerted only in the exercise of a sound discretion. Frank

v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969; United States v. Tyler, supra.

■■■ The Fourteenth Amendment provides, inter alia, "nor shall any State deprive any person of life, liberty, or property, without due process of law * * *." This governs any action of a state "whether through its legislature, through its courts, or through its executive or administrative officers." Mooney v. Holohan, 294 U.S. 103, 113, 55 S.Ct. 340, 342, 79 L.Ed. 791, 98 A.L.R. 406; Carter v. Texas, 177 U.S. 442, 447, 20 S.Ct. 687, 44 L.Ed. 839; Rogers v. Alabama, 192 U.S. 226, 231, 24 S.Ct. 257, 48 L.Ed. 417; Chicago, Burlington & Quincy R. v. Chicago, 166 U.S. 226, 233, 234, 17 S.Ct. 581, 41 L.Ed. 979. The most recent application of this principle is made in Smith v. Texas, 61 S.Ct. 164, 85 L.Ed. ——, November 25, 1940. While the phrase "due process of law" has never been precisely defined and perhaps is incapable of such definition, the concept is within limits capable of being fully grasped by the judicial and professional mind. It has frequently been construed as synonymous with the phrase "according to the law of the land." Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 64, 77 L.Ed. 158, 84 L.Ed. 527, notes the general acceptance of Webster's classic commentary upon it as "a law which hears before it condemns." More recently it was said, Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 465, 80 L.Ed. 682, that the due process clause requires "that state action, whether through one agency or another, shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions."

Neither diligence of counsel nor that of the court has disclosed any federal case which holds that the revocation of a conditional pardon may arbitrarily be made without violating the essentials of due process. State courts have condemned such arbitrary exercise of power in the absence of or notwithstanding express reservation. People v. Moore, 62 Mich. 496, 29 N.W. 80; State v. Horne, 52 Fla. 125, 42 So. 388, 7 L.R.A.,N.S., 719; Ex parte Davenport, 7 S.W.2d, supra; State ex rel. O'Connor v. Wolfer, 53 Minn. 135, 54 N. W. 1065, 19 L.R.A. 783, 39 Am.St.Rep. 582, though it has been held in a number of cases that if the conditional pardon reserves the right to the Governor to revoke it for cause, his judgment thereon is con-

clusive and the prisoner is not entitled to a hearing. Arthur v. Craig, 48 Iowa 264, 30 Am.Rep. 395; Ex parte Frazier, 91 Tex. Cr.R. 475, 239 S.W. 972; Spencer v. Kees, 47 Wash. 276, 91 P. 963; Ex parte Houghton, 49 Or. 232, 89 P. 801, 9 L.R.A.,N.S., 737, 13 Ann.Cas. 1101.

The Kentucky Court of Appeals in following the rationale of Ex parte Frazier, supra, reasoned that Fleenor was at large by virtue of executive clemency which he had accepted on the conditions set out in the pardon. One of such conditions was the reservation by the Governor of the right to revoke the pardon by an order entered upon the Executive Journal; that when that order was entered Fleenor was in no better condition than an escaped convict without documentary evidence of his right to freedom, and with an unexpired sentence hanging over him. The Texas Court had said of Frazier, that he was a convict held in custody by constituted authority under sentence imposed by the court. The Governor alone could grant him relief from his situation, and the relief being one of grace and not constraint, the grantor could impose therein such conditions as he saw fit within bounds of legality and morality.

■■ We may grant at once that the giving of a pardon is an act of grace; that to it the Governor may attach conditions; that if any condition is broken the Governor may revoke and that his judgment as to the breach is final and conclusive upon the courts. It does not follow, however, from the reservation of a right to revoke, that it may be exercised arbitrarily or upon whim, caprice, or rumor. Upon the granting of a pardon, albeit conditionally, the convict was entitled to his liberty and possessed of a right which could be forfeited only by reason of a breach of the conditions of the grant. In the present case it carried with it ultimate restoration of full civil rights. To hold that such forfeiture may be imposed without giving the grantee an opportunity to be heard, does violence to what are said to be "immutable principles of justice, which inhere in the very idea of free government, which no member of the Union can disregard." Holden v. Hardy, 169 U.S. 366, 389, 18 S.Ct. 383, 387, 42 L.Ed. 780. As said by the Michigan Court in People v. Moore, supra [62 Mich. 496, 29 N.W. 82], referring to like exercise of authority, "This arbitrary power and authority over the liberty of another is possessed by no other officer in our government, in times of peace. It cannot lawfully exist in a free country."

The granting of a conditional executive pardon may be assimilated to probation, or the imposition of a suspended sentence. Of this the Supreme Court has said, Escoe v. Zerbst, 295 U.S. 490, 492, 55 S.Ct. 818, 819, 79 L.Ed. 1566, "Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose." Citing Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266. The Act of Congress required a defendant to be brought before the court, but did not provide for a hearing before revocation of probation or the suspension of sentence could be made effective. The court, however, considered the end and aim of an appearance to be to enable the accused probationer to explain away the accusation, for the charge made against him may have been inspired by mistake or downright malice. "He shall have a chance to say his say before the word of his pursuers is received to his undoing."

■ It is our conclusion that the petitioner's right to his freedom under the terms of the pardon could not be revoked without such hearing as is the generally accepted prerequisite of due process, if the exercise of such power by the Governor is challenged by unequivocal allegations that the petitioner has complied with the conditions of the grant. This does not mean that he is entitled to a trial in court, or a trial in any strict or formal sense. Due process is satisfied if there is reasonable opportunity extended to Fleenor to explain away accusation that he has violated the conditions upon which his pardon was granted. As was said in Escoe v. Zerbst, supra, the "inquiry [should be] so fitted in its range to the needs of the occasion." More than that we need not decide.

■ It is pointed out, however, on behalf of the respondent, that the petition does not allege that if granted a hearing he could demonstrate to the satisfaction of the Governor that he has met the conditions upon which the pardon was granted. It is a familiar rule that courts will not pronounce judgments that are mere futilities, and allegations in a petition for a writ of habeas corpus that the petitioner is held without due process of law must be

specific in statement of facts supporting the legal conclusion, the adoption of which is urged. Kohl v. Lehlback, 160 U.S. 293, 295, 16 S.Ct. 304, 40 L.Ed. 432; Whitten v. Tomlinson, 160 U.S. 231, 16 S.Ct. 297, 40 L.Ed. 406. This is analogous to the rule that when a party invokes the power of the courts to hold a statute constitutionally invalid, he is not to be heard unless he has sustained or is in danger of sustaining a direct injury through its enforcement. Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078; City of Allegan v. Consumers' Power Co., 6 Cir., 71 F.2d 477.

The order dismissing the writ is set aside and the cause is remanded to the District Court with instructions to permit the appellant to amend his petition, if he is able to do so, to allege unequivocally that if granted a hearing he could demonstrate thereat that the conditions of the pardon have been fully complied with and that none of them have been breached. If and when that is done the appellant will be discharged from custody without prejudice to the right of the Commonwealth or the Governor of Kentucky to take such other proceedings as are not inconsistent herewith.

Reversed.