**HEADNOTE:** *Anthony Grandison v. State* and *Anthony Grandison v. State*, Nos. 2039 and 2822, September Term 2014 and 2015

**CRIMINAL LAW – ILLEGAL SETENCE – MARYLAND CONSTITUTION – POWERS OF GOVERNOR TO COMMUTE SENTENCE**

**CRIMINAL LAW – ILLEGAL SETENCE – MARYLAND CONSTITUTION – *EX POST FACTO* CLAUSE – POWERS OF GOVERNOR TO COMMUTE SENTENCE**

**CRIMINAL LAW – ILLEGAL SETENCE – STATUTORY INTERPRETATION – *EX POST FACTO* CLAUSE – POWERS OF GOVERNOR TO COMMUTE SENTENCE**

In 1983, Anthony Grandison, appellant, hired Vernon Lee Evans, to murder Scott Piechowicz and his wife, Cheryl Piechowicz, to prevent them from testifying against him in a then-pending criminal trial in the United States District Court for the District of Maryland. Evans succeeded in murdering Mr. Piechowicz, but in a case of mistaken identity, Evans murdered Susan Kennedy instead of Ms. Piechowicz.

After being convicted in federal court for conspiracy to violate civil rights resulting in death and witness tampering, Grandison was sentenced to life imprisonment plus a consecutive ten-year sentence. In 1984, Grandison was also convicted by a jury sitting in the Circuit Court for Somerset County of two counts of first degree murder, conspiracy to commit murder, and use of a handgun in the commission of a crime of violence. These convictions resulted in two death sentences along with a sentence of life for the conspiracy conviction plus twenty years for the handgun conviction to run consecutive to the life sentence.

In 2013, the General Assembly repealed the death penalty in Maryland, and that same year, Grandison filed a motion to correct an illegal sentence. The circuit court denied all relief, except pursuant to the State's concession, vacated Grandison's twenty-year sentence for the handgun violation. The Court then resentenced Grandison to fifteen years for the handgun violation to run consecutive to the life sentence for conspiracy. Grandison filed an appeal from this order.

In 2015, Governor Martin O'Malley signed Executive Order 01.01.2015.05 commuting Grandison's death sentences to life without the possibility of parole sentences. Thereafter, Grandison filed another motion to correct an illegal sentence attacking his new sentence of life without the possibility of parole. The circuit court denied all requested relief under this second motion to correct an illegal sentence. Grandison filed an appeal from this order and the appeals were consolidated.

Held: Affirmed.

After the Court found many of Grandison's claims not cognizable under Maryland Rule 4-345(a) and *Colvin v. State*, 450 Md. 718 (2016), the Court considered appellant's challenges to Governor O'Malley commuting his death sentences to life without the possibility of parole. The Court first determined that the Governor of Maryland has the power to grant reprieves or pardons under Article II, Section 20 of the Maryland Constitution. The Court held that except for a limitation of this power in cases of impeachment under Article II, Section 20, and perhaps, bribery of public officials under Article III, Section 50, the Governor of Maryland's pardon power is plenary.

The Court next turned to Grandison's contention that Governor O'Malley did not have the authority under Article II, Section 20, to *sua sponte* commute his death sentences to life in prison without parole sentences, because he did not apply for a commutation. The Court held that the provision on which Grandison relied, namely that "before granting a *nolle prosequi*, or pardon, [the Governor] shall give notice, in one or more newspapers, of the application made for it, and of the day on, or after which, his decision will be given[,]" was merely a notice requirement and not a condition precedent. Because Governor O'Malley gave notice of his commuting Grandison's sentence on the day of his decision, such action by the Governor was lawful.

In considering Grandison's contention that Governor O'Malley's commutation of his death sentences also violated the *Ex Post Facto* Clause of Article 17 of the Maryland Declaration of Rights, the Court held that, even if the *Ex Post Facto* Clause was applicable to the Maryland Constitution, the Governor's actions did not violate the *Ex Post Facto* Clause because such action did not *increase* Grandison's sentences. *See Woods v. State*, 315 Md. 591, 606-07 (1989) (rejecting "the notion that a life sentence without the possibility of parole is, even relatively, the equivalent of death itself"). Moreover, the Court rejected Grandison's alternative argument that, if the Governor derived his authority under Md. Code (1957, 1982 Repl. Vol.), Article 41, §§ 118 and 119, and their modern-day counterparts, Md. Code (1999, 2008 Repl. Vol., 2017 Supp.), Correctional Services Article ("CS") §§ 7-601 and 7-602, this exercise violated the *Ex Post Facto* Clause. The Court held that, because the Governor was authorized to commute a sentence of death to a sentence of life without the possibility of parole under the language of Article 41, §§ 118 and 119, which were in effect at the time of Grandison's sentencing, and there was no retroactive change in CS §§ 7-601 and 7-602, no violation of the *Ex Post Facto* Clause occurred.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

———————————————————
CONSOLIDATED CASES
———————————————————

No. 2039
September Term, 2014

ANTHONY GRANDISON
v.
STATE OF MARYLAND

———————————————————————

No. 2822
September Term, 2015

ANTHONY GRANDISON
v.
STATE OF MARYLAND

———————————————————————

Woodward, C.J.,
Leahy,
Moylan, Charles E., Jr.
  (Senior Judge, Specially Assigned),

JJ.

———————————————————————

Opinion by Woodward, C.J.

———————————————————————

Filed:  November 29, 2017

*Judge Dan Friedman, Judge Kathryn Grill Graeff, and Judge Matthew J. Fader did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

In 1983, Anthony Grandison, appellant, for a fee of $9,000, hired his friend, Vernon Lee Evans, to murder Scott Piechowicz and his wife, Cheryl Piechowicz, to prevent them from testifying against him in a then-pending criminal trial in the United States District Court for the District of Maryland. *Grandison v. State*, 305 Md. 685, 697, *cert. denied*, 479 U.S. 873, *and reh'g denied*, 479 U.S. 1001 (1986). Pursuant to their unlawful agreement, Evans succeeded in murdering Scott Piechowicz but failed in killing Cheryl Piechowicz, instead murdering her sister, Susan Kennedy, by mistake.[1] *Id.*

Later that year, Grandison, Evans, and two others[2] were tried in the United States District Court for the District of Maryland on charges of conspiracy to violate civil rights resulting in death, in violation of 18 U.S.C. § 241, and witness tampering, in violation of 18 U.S.C. § 1512. *United States v. Grandison*, 780 F.2d 425, 428 (4th Cir. 1985), *vacated sub nom. Kelly v. United States*, 479 U.S. 1076 (1987), *aff'd on remand*, 885 F.2d 143 (4th Cir. 1989), *cert. denied*, 495 U.S. 934 (1990). All four defendants were convicted of both charges, *id.*, and Grandison, in particular, was sentenced to life imprisonment and a consecutive term of ten years' imprisonment. *Grandison*, 305 Md. at 698.

---

[1] On the day Evans was to commit the killings, at the Piechowicz's place of employment (the Warren House Motel in Pikesville, Baltimore County), Susan Kennedy was working in her stead, and Evans, apparently, mistook Ms. Kennedy for Ms. Piechowicz. *Grandison*, 305 Md. at 697.

[2] The other co-defendants in Grandison's federal trial were Janet Patricia Moore and Rodney Kelly. *United States v. Grandison*, 780 F.2d 425, 428 (4th Cir. 1985), *vacated sub nom. Kelly v. United States*, 479 U.S. 1076 (1987), *aff'd on remand*, 885 F.2d 143 (4th Cir. 1989), *cert. denied*, 495 U.S. 934 (1990).

The following year, after removal of the Maryland case to Somerset County at Grandison's request,[3] he was convicted, by a jury sitting in the Circuit Court for Somerset County, of conspiracy to murder, two counts of first-degree murder, and use of a handgun in the commission of a crime of violence. *Id.* He was thereafter sentenced, by the jury, to death sentences for both first-degree murders, and the court imposed a sentence of "life imprisonment for the conspiracy conviction and twenty years for the handgun violation consecutive to the life sentence." *Id.* Both of the latter sentences "were imposed to run consecutively to the life plus ten years sentence previously imposed in the federal case." *Id.*

Grandison subsequently filed a post-conviction petition, in the Circuit Court for Somerset County, and, in 1992, that court, relying upon the Supreme Court's decision in *Mills v. Maryland*, 486 U.S. 367 (1988),[4] vacated his death sentences but otherwise denied his claims. *Grandison v. State*, 341 Md. 175, 194 (1995), *cert. denied*, 519 U.S. 1027

---

[3] A defendant in a capital case had an absolute right to have his case removed to another county. *Redman v. State*, 363 Md. 298, 305-06 (citing Md. Const., Art. IV, § 8), *cert. denied*, 534 U.S. 860 (2001), *and reh'g denied*, 535 U.S. 966 (2002).

[4] As the Court of Appeals explained:

> In *Mills*, the Supreme Court held that the Maryland capital sentencing form, and the jury instructions pertaining thereto, were unconstitutional because the *Mills* jury could have believed that it was precluded from giving any weight to mitigating factors found by some, but not all, jurors. *Mills*, 486 U.S. at 373-84, 108 S. Ct. at 1865-70, 100 L. Ed. 2d at 393-400.

*Grandison v. State*, 341 Md. 175, 194 n.2 (1995), *cert. denied*, 519 U.S. 1027 (1996), *and reh'g denied*, 519 U.S. 1143 (1997).

(1996), *and reh'g denied*, 519 U.S. 1143 (1997). At resentencing, a jury in Somerset County reimposed the two death sentences for the murders of Scott Piechowicz and Susan Kennedy. *Id.*

Grandison thereafter lodged repeated challenges, in both state and federal court, to those sentences, finally gaining a temporary reprieve when, in 2006, the Court of Appeals enjoined the State from carrying out the death penalty against his co-defendant, Evans, because the protocols governing the method of administering that penalty, lethal injection, had been adopted, held the Court, in a manner that violated the Maryland Administrative Procedure Act. *Evans v. State*, 396 Md. 256, 344-46, 350 (2006), *cert. denied*, 552 U.S. 835 (2007).[5]

That injunction was to remain in effect until new protocols were promulgated in accordance with the Maryland Administrative Procedure Act, *id.* at 350, but such new protocols were never promulgated. *See* Fiscal and Policy Note (Revised), S.B. 276, at 3-5 (2013). Instead, the General Assembly repealed the death penalty in 2013. 2013 Md. Laws, ch. 156, § 3. Meanwhile, on June 6, 2013, Grandison filed, in the Circuit Court for Somerset County, the first of two motions to correct an illegal sentence (which he supplemented several times) that are the subject of the present appeals. Following two hearings, the circuit court, on November 13, 2014, issued a memorandum opinion and order granting relief, at the State's own concession, on a single claim—that the twenty-year sentence imposed for use of a handgun in the commission of a crime of violence was illegal,

---

[5] Not only Evans, but all Maryland prisoners then awaiting the death penalty, including Grandison, obtained the benefit of that injunction. *See Evans*, 396 Md. at 350.

because, at the time Grandison committed that offense, its maximum penalty was fifteen years' imprisonment.[6]  Accordingly, the circuit court vacated Grandison's twenty-year sentence for that crime and imposed a fifteen-year term of imprisonment, consecutive to his life sentence for conspiracy as well as to Grandison's federal sentences.  But it denied all of his other claims.  Grandison noted a timely appeal from that order, raising the following questions:

[6] There was some ambiguity as to whether, at the time of the offense, the maximum penalty for the use of a handgun in the commission of a felony or crime of violence was fifteen or twenty years' imprisonment.  The offense was committed on April 28, 1983. *Grandison*, 305 Md. at 697.  At that time, Md. Code (1957, 1982 Repl. Vol., Supp. 1982), Art. 27, § 36B(d) read as follows:

> (d) Any person who shall use a handgun in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a separate misdemeanor and on conviction thereof shall, in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor:
>
> (1)  For a first offense, be sentenced to the Maryland Division of Correction for a term of not less than 5 nor more than 20 years, and it is mandatory upon the court to impose no less than the minimum sentence of 5 years.
>
> (2)  For a second or subsequent offense, be sentenced to the Maryland Division of Correction for a term of not less than 5 nor more than 15 years, and it is mandatory upon the court to impose no less than a minimum consecutive sentence of 5 years which shall be served consecutively and not concurrently to any other sentence imposed by virtue of the commission of said felony or misdemeanor.

The record does not indicate whether Grandison was charged and convicted under Art. 27, § 36B(d)(1) or (d)(2).  Because the State conceded below that Grandison was subject to a maximum penalty of fifteen years, we need not resolve whether he was sentenced under Art. 27, § 36B(d)(1) or (d)(2).  Instead, we accept the State's concession and proceed by resolving the ambiguity in favor of Grandison.

4

I. Did the circuit court abuse its discretion in ruling appellant's convictions for first degree murder did not merge with his conviction for use of a handgun in the commission of [ ] a felony or crime of violence under the required evidence test?

II. Did the circuit court abuse its discretion in holding a motion to correct illegal sentence is not the appropriate forum to consider appellant's allegations his sentences are illegal under the *Bartkus* exception to dual sovereignty?

III. Did the circuit court abuse its discretion in holding the jury was properly hearkened since a mere hearkening of counts of an indictment without specifying the offense does not constitute a hearkening of the verdict as to first degree murder or any other offense?

IV. Did the circuit court abuse its discretion in ruling after vacating sentence under *Mills* the court had the authority to resentence and there was no legal requirement the resentencing jury announce their findings in open court or requirement to poll or hearken their findings?

V. Did the circuit court abuse its discretion in imposing the fifteen year sentence for use of a handgun in the commission of a felony or crime of violence consecutive to Grandison's federal sentences of life plus ten years after the federal authorities made those sentences run concurrent with the State sentences?

Then, in 2015, Governor Martin O'Malley, exercising his pardon power, commuted Grandison's death sentences to sentences of life imprisonment without the possibility of parole. Executive Order 01.01.2015.05 (Jan. 20, 2015). Thereafter, Grandison filed, in the Circuit Court for Somerset County, a second motion to correct an illegal sentence. The circuit court subsequently issued a written memorandum opinion and order denying that motion. Grandison noted a timely appeal from that order, raising two question for review, which we have slightly rephrased as follows:

5

I. Did the circuit court abuse its discretion in denying appellant's motion to correct illegal sentence in holding that the former Governor had authority under Maryland Constitution, Art. II, § 20 to *sua sponte* exercise executive powers to commute Grandison's death sentences to life imprisonment without the possibility of parole without an application having been made seeking commutation?

II. Did the circuit court abuse its discretion in holding that the former Governor's commutation of his sentences of death to life imprisonment without the possibility of parole did not violate Art. 17 of the Maryland Declaration of Rights, which prohibits *ex post facto* laws in criminal cases?

On this Court's own motion, we consolidated these appeals.

## DISCUSSION

### I. *Appeal No. 2039*

### A.

Grandison claims that the circuit abused its discretion in ruling that his convictions for first-degree murder did not merge with his conviction for use of a handgun in the commission of a felony or crime of violence under the required evidence test. This claim is without merit.

Although the Court of Appeals held, in *State v. Ferrell*, 313 Md. 291, 297 (1988), that use of a handgun in the commission of a felony or crime of violence and the predicate felony or crime of violence are the same offense under the required evidence test, that holding addressed a different circumstance—whether the predicate offense and the handgun offense could be tried in successive prosecutions. *Ferrell* held that they could not be tried in successive prosecutions. *Id.* *Ferrell* said nothing about whether separate sentences may be imposed for those crimes if they are brought in the same trial.

6

The question before us was squarely addressed by the Supreme Court in *Missouri v. Hunter*, 459 U.S. 359 (1983). There, the Court held:

> Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*,[7] a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Id.* at 368-39.

At the time the offenses at issue were committed, the statute proscribing unlawful use of a handgun stated as follows:

> *Unlawful use of handgun in commission of crime.* – Any person who shall use a handgun in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a separate misdemeanor and on conviction thereof shall, in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor . . . be sentenced to the Maryland Division of Correction[.]

Md. Code (1957, 1982 Repl. Vol., Supp. 1982), Art. 27, § 36B(d).[8]

It is manifest that the General Assembly intended that a separate sentence be imposed upon any person convicted of a violation of Section 36B(d), "in addition to any

---

[7] *Blockburger v. United States*, 284 U.S. 299 (1932) (setting forth the required evidence test).

[8] A similar provision is now codified at Maryland Code (2002, 2012 Repl. Vol.), Criminal Law Article ("CL"), § 4-204. The most noteworthy changes in the new statute are that the penalty provision now contains an enhancement for repeat offenders in CL § 4-204(c)(2) and that, since 2011, its proscription extends to the use of firearms rather than just handguns. 2011 Md. Laws, chs. 164, 165.

other sentence imposed by virtue of commission of said felony or misdemeanor." *Id.*; *see, e.g.*, *Whack v. State*, 288 Md. 137, 145-49 (1980) (holding that separate sentences may be imposed for a violation of Section 36B(d) and the predicate offense, where both convictions were the result of the same act, so long as the charges are brought in a single trial), *cert. denied*, 450 U.S. 990 (1981). Given that unambiguous expression of legislative intent, and the Supreme Court's instruction in *Missouri v. Hunter*, it is clear that Grandison's claim fails.[9]

## B.

As noted earlier, Grandison was prosecuted in both federal and Maryland courts, in the former for conspiracy to murder the witnesses in a prior federal narcotics trial and in the latter for, among other things, first-degree murder of those same witnesses. He now complains that the Maryland prosecution was a "sham," essentially indistinguishable from the federal prosecution, and that, therefore, his Maryland sentences are illegal, under the purported *Bartkus*[10] exception to the dual sovereignty doctrine. From that premise, Grandison concludes that the circuit court abused its discretion in ruling that this claim was

---

[9] Grandison also invokes the rule of lenity. That argument also fails, as the rule of lenity is applicable only where the legislative intent to impose separate penalties is unclear. *Latray v. State*, 221 Md. App. 544, 555 (2015) (observing that the rule of lenity "is purely a question of reading legislative intent" and that if the legislature "intended two crimes arising out of a single act to be punished separately, we defer to that legislated choice" (internal quotation marks and citation omitted)). Here, there is no ambiguity as to the legislative intent to permit the imposition of separate penalties for both the illegal use of a firearm and the predicate offense.

[10] *Bartkus v. Illinois*, 359 U.S. 121, *reh'g denied*, 360 U.S. 907 (1959).

not cognizable in a motion to correct an illegal sentence. To understand this claim requires a brief digression into the Supreme Court decision upon which Grandison relies, *Bartkus v. Illinois*, 359 U.S. 121, *reh'g denied*, 360 U.S. 907 (1959).

In *Bartkus*, the defendant had been acquitted, in the United States District Court for the Northern District of Illinois, of robbery of a federally insured savings and loan association. *Id.* at 121-22. Bartkus was thereafter charged, in the Criminal Court of Cook County, Illinois, with violation of a state robbery statute. *Id.* at 122. "The facts recited in the Illinois indictment were substantially identical to those contained in the prior federal indictment." *Id.* Bartkus moved to dismiss based upon double jeopardy, but the Illinois court rejected that claim. *Id.* He was thereafter convicted and sentenced to life imprisonment as a repeat offender. *Id.* The Supreme Court of Illinois affirmed, as did the United States Supreme Court, the latter holding that a defendant may be prosecuted in both federal and state courts for the same act without violating the Due Process Clause of the Fourteenth Amendment, because, under the "dual sovereignty" doctrine,[11] an act may be an offense against both the state where it was committed as well as against the federal government.[12] *Id.* at 122, 136-39.

---

[11] The Court of Appeals has explained the "dual sovereignty" doctrine as follows: "Under the 'dual sovereignty' doctrine, separate sovereigns deriving their power from different sources are each entitled to punish an individual for the same conduct if that conduct violates each sovereignty's laws." *Gillis v. State*, 333 Md. 69, 73 (1993), *cert. denied*, 511 U.S. 1039 (1994).

[12] In so holding, the *Bartkus* Court expressly rejected the "incorporation doctrine," according to which the first eight amendments to the federal Constitution should be deemed

(continued . . .)

9

In *dictum*, the Court observed that the record did not "sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution[,]" *id.* at 124, which would have been barred under the Double Jeopardy Clause of the Fifth Amendment. *See id.* at 123. Thereafter, some courts interpreted that statement as expressing a narrow so-called "*Bartkus* exception" to the dual sovereignty doctrine, which bars a successive "sham prosecution." *See*, *e.g.*, *United States v. Guzman*, 85 F.3d 823, 826 (1st Cir.) (observing that "under very limited circumstances[,] successive prosecutions by separate sovereigns might transgress the Double Jeopardy Clause"), *cert. denied*, 519 U.S. 1020 (1996); *In re Kunstler*, 914 F.2d 505, 517 (4th Cir. 1990) (noting that "a 'tool of the same authorities' exception is possible in some circumstances," which "may only be established by proof that State officials had little or no independent volition in their proceedings"), *cert. denied*, 499 U.S. 969 (1991); *United States v. Aboumoussallem*, 726 F.2d 906, 910 (2d Cir. 1984) (noting that "a narrow exception to the 'dual sovereignty' doctrine, carved out in *Bartkus v. Illinois*, bars a second prosecution where one prosecuting sovereign can be said to be acting as a 'tool' of the

_____

(. . . continued)
applicable to the states, as having been "incorporated" into the Fourteenth Amendment, which binds the states. 359 U.S. at 126. During the ensuing decade, the Supreme Court "selectively" incorporated most, but not all, of the first eight amendments, holding that their specific provisions applied not only to the federal government but to the states as well. *See*, *e.g.*, *Benton v. Maryland*, 395 U.S. 784 (1969) (prohibition against double jeopardy); *Duncan v. Louisiana*, 391 U.S. 145, *reh'g denied*, 392 U.S. 947 (1968) (right to jury trial); *Klopfer v. North Carolina*, 386 U.S. 213 (1967) (right to speedy trial); *Pointer v. Texas*, 380 U.S. 400 (1965) (right to confrontation); *Malloy v. Hogan*, 378 U.S. 1 (1964) (right against compulsory self-incrimination); *Gideon v. Wainwright*, 372 U.S. 335 (1963) (right to counsel); *Mapp v. Ohio*, 367 U.S. 643, *reh'g denied*, 368 U.S. 871 (1961) (right to be secure against unreasonable searches and seizures).

other, or where the second prosecution amounts to a 'sham and a cover' for the first" (internal citations omitted)).

Other courts, however, have questioned whether there even is such an exception. *See, e.g., United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1361 (11th Cir. 1994) (declining to decide whether the "sham prosecution" exception exists); *United States v. Brocksmith*, 991 F.2d 1363, 1366 (7th Cir.) (stating that "[w]e have questioned whether *Bartkus* truly meant to create such an exception, and we have uniformly rejected such claims"), *cert. denied*, 510 U.S. 999 (1993), *and reh'g denied*, 510 U.S. 1159 (1994); *United States v. Raymer*, 941 F.2d 1031, 1037 (10th Cir. 1991) (observing that "[a] possible exception might exist"); *United States v. Harrison*, 918 F.2d 469, 474 (5th Cir. 1990) (noting that, although "*Bartkus* does suggest that a state prosecution may not be used as a cover and a tool for a federal prosecution[,]" the Court "did not define a clear exception in that case").

In any event, even if we assume, *arguendo*, that the *Bartkus* exception to the dual sovereignty doctrine exists, the circuit court correctly concluded that such a claim may not be raised in a Rule 4-345(a) motion. In *United States v. Liddy*, 542 F.2d 76, 79 (D.C. Cir. 1976), the United States Court of Appeals for the District of Columbia Circuit observed that the defendant's burden "of establishing that federal officials are controlling or manipulating the state processes is substantial[,]" namely, that he "must demonstrate that the state officials had little or no independent volition in the state proceedings." To prevail on such a claim would likely require far more than Grandison's bald allegation and, in the absence of an affidavit from the prosecution admitting to such a scheme (a most unlikely

11

occurrence), would require an evidentiary hearing. But that would be entirely contrary to the nature of a Rule 4-345(a) motion, which is focused on the "narrow" category of sentences that are "intrinsically and substantively unlawful," not those that may be beset by "some arguable procedural flaw." *Colvin v. State*, 450 Md. 718, 725 (2016) (internal quotation marks and citation omitted). Indeed, "a motion to correct an illegal sentence is not[,]" as Grandison would have it, "an alternative method of obtaining belated appellate review of the proceedings that led to the imposition of judgment and sentence in a criminal case." *State v. Wilkins*, 393 Md. 269, 273 (2006).

Even if such a claim were cognizable in a Rule 4-345(a) motion, we would conclude that it is barred by the law of the case doctrine. Prior to Evans's and Grandison's separate 1984 trials, both defendants filed motions to dismiss, contending that *Benton v. Maryland*, 395 U.S. 784 (1969), which held that the Double Jeopardy Clause of the Fifth Amendment was applicable to the states by virtue of the Fourteenth Amendment, had effectively abrogated the dual sovereignty doctrine, as articulated in *Bartkus*. *Evans v. State*, 301 Md. 45, 49-50 (1984), *cert. denied*, 470 U.S. 1034 (1985). The Court of Appeals rejected that assertion and remanded for trials, which resulted in convictions and sentences, which Grandison now challenges. *See id.* at 51, 58. Here, however, instead of disparaging *Bartkus*, Grandison relies upon it as the basis for his claim.

Under the law of the case doctrine, "once an appellate court rules upon a question presented on appeal, litigants and lower courts become bound by the ruling, which is considered to be the law of the case." *Scott v. State*, 379 Md. 170, 183 (2004). Moreover, "'[d]ecisions rendered by a prior appellate panel will generally govern the second appeal'

12

at the same appellate level as well, unless the previous decision is incorrect because it is out of keeping with controlling principles announced by a higher court and following the decision would result in manifest injustice." *Id.* at 184 (quoting *Hawes v. Liberty Homes*, 100 Md. App. 222, 231 (1994)). And, more recently, in *Holloway v. State*, 232 Md. App. 272, 282 (2017), we observed that the law of the case doctrine applies, not only to a claim that was actually decided in a prior appeal, but also to any claim "that could have been raised and decided." Furthermore, the Court of Appeals has expressly rejected the notion that "the doctrine of law of the case [is] inapplicable to motions to correct an illegal sentence." *Scott*, 379 Md. at 183.

Nothing prevented Grandison, in his 1984 double jeopardy challenge, from raising the same claim that he raises before us now. Were this issue properly before us, we would hold that, as it "could have been raised and decided," it is barred by the law of the case doctrine. *See Holloway*, 232 Md. App. at 282.

### C.

Grandison contends that the circuit court abused its discretion in holding that the jury was properly hearkened. Not only is this claim utterly without merit, it is foreclosed by *Colvin v. State*, 450 Md. 718, 727 (2016). There, the Court of Appeals held that a claim, alleging that the jury had not been properly polled, thereby rendering the sentences imposed on its verdict illegal, was not cognizable under Rule 4-345(a). *Id.* The Court stated:

> Under Maryland law, procedural challenges to a verdict ought be done by contemporaneous objection and, if not

13

> corrected, presented through the direct appeal process. Such claims do not come within the purview of Rule 4-345(a).

*Id.* at 728. Likewise, Grandison's claim of an improperly hearkened jury is a procedural challenge to his verdict and is therefore not cognizable in a motion to correct an illegal sentence.

We note that Grandison does not claim that the jury was not polled or hearkened *at all*, a defect that, if proven, would fall outside of the holding of *Colvin*. *See id* at 727-28. In any event, the circuit court, as it did not have the benefit of *Colvin* at the time it rendered its decision, painstakingly examined the record and, at pages 16-19 of its memorandum opinion, demonstrated the falsity of Grandison's claim as to whether the jury had been properly hearkened. We need not repeat here what the circuit court wrote, except to point out that it was correct. Thus, even if Grandison's claim were cognizable in a Rule 4-345(a) motion, it would fail nonetheless.

### D.

Grandison maintains that the circuit court abused its discretion in denying his claims that the resentencing court lacked the authority to impose sentence and that the resentencing violated the prohibition against double jeopardy, because both the original sentencing jury and the resentencing jury failed to announce their findings in open court, nor were they polled or hearkened to their findings. These claims are utterly without merit.

When the post-conviction court vacated Grandison's original death sentences, under *Mills v. Maryland*, it is obvious that resentencing, with the possibility of new death sentences, was permitted and did not violate the prohibition against double jeopardy. *See*

14

*Twigg v. State*, 447 Md. 1, 21 (2016) (noting that "[t]he Supreme Court has made clear that resentencing does not offend double jeopardy principles"). As for Grandison's complaints regarding the procedures followed during the resentencing, those matters are not cognizable in a Rule 4-345(a) motion. *See Colvin*, 450 Md. at 728. But, in any event, as the circuit court explained in its memorandum opinion, the procedures followed fully comported with the then-extant applicable Maryland rule.

### E.

Finally, Grandison complains that the circuit court abused its discretion in imposing the (new) fifteen-year sentence for use of a handgun in the commission of a felony or crime of violence consecutive to his federal sentences. He does not (and cannot) complain that the newly imposed sentence constituted an illegal increase in his sentence, as it merely replaced a former twenty-year sentence that had also been made consecutive to his state and federal sentences.

The short answer to this complaint is that it is not cognizable in a motion to correct an illegal sentence, which encompasses only claims of substantively illegal sentences. *Colvin*, 450 Md. at 728. "An illegal sentence, for purposes of Rule 4-345(a), is one in which the illegality 'inheres in the sentence itself; *i.e.*, there either has been no conviction warranting any sentence for the particular offense or the sentence is not a permitted one for the conviction upon which it was imposed and, for either reason, is intrinsically and substantively unlawful.'" *Id.* at 725 (quoting *Chaney v. State*, 397 Md. 460, 466 (2007)). Here, the fifteen-year sentence was provided by statute, *see* Md. Code (1957, 1982 Repl. Vol., 1982 Supp.), Art. 27, § 36B(d), and is not "intrinsically and substantively

15

unlawful[,]" whether imposed concurrently with or consecutively to any other sentence Grandison may be serving, so long as the resulting sentence does not constitute an increase of his previous sentence (which it does not). *See id.*

## II. *Appeal No. 2822*

In Appeal No. 2822, Grandison, apparently ungrateful that he has been spared from the death penalty, challenges the legality of former Governor O'Malley's commutation of his death sentences to sentences of life imprisonment without the possibility of parole. We shall first address the constitutional basis for a governor's pardon power and then address Grandison's claims, concluding that none of them has any merit.

## A.

The Governor of Maryland has had the power to grant reprieves and pardons under every version of the Maryland Constitution, dating back to 1776. *See* Md. Const., Art. XXXIII (1776) (providing that the Governor "may alone exercise all other [of] the executive powers of government," including the power to "grant reprieves or pardons for any crime, except in such cases where the law shall otherwise direct"). Under the present 1867 Maryland Constitution, the Governor possesses the power to "grant reprieves and pardons," as provided under Article II, § 20:

> He shall have power to grant reprieves and pardons, except in cases of impeachment, and in cases, in which he is prohibited by other Articles of this Constitution; and to remit fines and forfeitures for offences against the State; but shall not remit the principal or interest of any debt due the State, except, in cases of fines and forfeitures; and before granting a *nolle prosequi*, or pardon, he shall give notice, in one or more newspapers, of the application made for it, and of the day on, or after which, his decision will be given; and in every case, in which he

16

> exercises this power, he shall report to either Branch of the Legislature, whenever required, the petitions, recommendations and reasons, which influenced his decision.

Alfred S. Niles, the author of a treatise on Maryland constitutional law, stated that "there is practically no restriction upon" a Governor's "pardoning any offence against the state, except in the case of an impeachment." Alfred S. Niles, *Maryland Constitutional Law* 122 (1915). More recently, Judge Dan Friedman, a member of this Court and the author of another treatise on the subject, wrote that "the pardon power is broad" and that, except in cases of impeachment and, perhaps, bribery of public officials, *see* Md. Const., Art. III, § 50,[13] there is "no other provision that limits the Governor's pardon power[.]" Dan Friedman, *The Maryland State Constitution* 119 (2011). Moreover, the Court of Appeals has recognized that the gubernatorial pardon power encompasses the power to commute a sentence, *Jones v. State*, 247 Md. 530, 534 (1967), *reh'g denied*, 259 Md. 146 (1970),[14] that is, to "substitute[] a lesser penalty for the grantee's offense for the penalty

---

[13] Article III, § 50 provides in part that "any person," convicted of bribery of a public official "shall, as part of the punishment thereof, be forever disfranchised and disqualified from holding any office of trust, or profit, in this State." According to Judge Friedman's treatise, such punishment "may not be subject to pardon[,]" although "[t]here are no appellate opinions to suggest whether [that] interpretation is correct." Dan Friedman, *The Maryland State Constitution* 119 (2011).

[14] When *Jones v. State*, 247 Md. 530, 532 (1967), was decided, capital punishment was still a legal sentence upon a conviction for rape. Although that is obviously no longer true, as a matter of federal constitutional law, *see Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008) (holding that a death sentence for a conviction "for the rape of a child where the crime did not result, and was not intended to result, in death of the victim[,]" was barred by the Eighth Amendment), the Court of Appeals' statements, in *Jones*, concerning the scope of the gubernatorial pardon power, are still binding.

17

imposed by the court in which the grantee was convicted." Md. Code (1999, 2008 Repl. Vol., 2017 Supp.), Correctional Services Article ("CS"), § 7-101(d).

Indeed, the gubernatorial pardon power is derived from the Maryland Constitution itself, not from any legislative enactment, and it therefore may be exercised independently of legislative control, so long as the Governor, in exercising that power, does not violate federal constitutional provisions or their Maryland cognates. *See Schick v. Reed*, 419 U.S. 256, 266 (1974) (concluding that the analogous presidential pardon power[15] "flows from the Constitution alone, not from any legislative enactments, and that it cannot be modified, abridged, or diminished by the Congress"). That is especially true in Maryland, in light of Article 8 of the Maryland Declaration of Rights,[16] which provides for the separation of powers. We conclude that the gubernatorial pardon power is plenary, although, undoubtedly, in commuting a prisoner's sentence, the Governor may not impose a reduced sentence that, itself, constitutes "cruel and unusual punishment."[17] *See Schick*, 419 U.S. at

---

[15] *See* U.S. Const. art. II, § 2, cl. 1 (providing, among other things, that the President "shall have Power to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment").

[16] Article 8 of the Maryland Declaration of Rights provides:

> That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other.

[17] For examples of non-capital sentences that have been deemed to be "cruel and unusual punishment," see *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion), which concluded that the "use of denationalization as a punishment is barred by the Eighth
(continued . . .)

266 (stating that the presidential pardon provision allows "plenary authority in the President to 'forgive' the convicted person in part or entirely, to reduce a penalty in terms of a specified number of years, or to alter it with conditions which are in themselves constitutionally unobjectionable").

Having set forth the Governor's broad pardon power, we turn next to address Grandison's claims that former Governor O'Malley exceeded that power in commuting his death sentences to sentences of life imprisonment without the possibility of parole.

**B.**

Grandison claims that the former Governor had no authority under Maryland Constitution, Article II, § 20, to *sua sponte* exercise his executive power to commute his death sentences to life imprisonment without the possibility of parole because he did not apply for commutation. We disagree.

The passage on which Grandison relies provides:

> and **before granting a** *nolle prosequi*, or **pardon, he shall give notice, in one or more newspapers, of the application made for it**, and of the day on, or after which, his decision will be given;

---

(. . . continued)
Amendment[;]" and *Weems v. United States*, 217 U.S. 349, 363-64, (1910), which held that a fifteen-year sentence "at hard and painful labor," along with "accessory penalties" of "civil interdiction[,]" "perpetual absolute disqualification[,]" and "subjection to surveillance during life[,]" upon conviction for falsifying a public record, constituted cruel and unusual punishment.

Md. Const., Art. II, § 20 (emphasis added). Grandison maintains that the bolded language must be interpreted as imposing a condition precedent upon the grant of a gubernatorial pardon, namely, that the grantee must first have applied for a pardon.

As we have just explained, the gubernatorial pardon power is plenary. Specifically, it does not depend upon a request by the grantee. The only substantive limitations on that power are that it may not be exercised "in cases of impeachment, and in cases, in which [the Governor] is prohibited by other Articles of this Constitution." Md. Const., Art. II, § 20. We interpret the procedural limitation, on which Grandison relies, that "before granting a *nolle prosequi*, or pardon, [the Governor] shall give notice, in one or more newspapers, of the application made for it, and of the day on, or after which, his decision will be given[,]" as merely a notice requirement and not a condition precedent. Md. Const., Art. II, § 20. As the State aptly puts it in its brief, "the most logical interpretation of the 'application' language is that the Governor will be required to give notice of any application received, but only in the event that one was actually received." In any event, Grandison acknowledges that former Governor O'Malley gave the required notice of "the day on, or after which, his decision [would] be given." Accordingly, we conclude that the fact that Grandison did not apply for a commutation of sentence does not render the actions of the former Governor illegal.

## C.

### 1.

Finally, we turn to Grandison's assertion that the former Governor, in commuting his death sentences to sentences of life without the possibility of parole, imposed illegal

20

sentences, in violation of the *Ex Post Facto* Clause in Article 17 of the Maryland Declaration of Rights. That Article provides:

> That retrospective Laws, punishing acts committed before the existence of such Laws, and by them only declared criminal are oppressive, unjust and incompatible with liberty; wherefore, no *ex post facto* Law ought to be made; nor any retrospective oath or restriction be imposed, or required.

Md. Const. Declaration of Rights, art. 17.

This provision is generally construed *in pari materia* with its federal counterpart, Article I, Section 10, of the United States Constitution.[18] *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 430 Md. 535, 548 (2013) (plurality opinion); *id.* at 577 n.1 (McDonald, J., concurring); *id.* at 578-79 (Barbera, J., dissenting). On its face, the *Ex Post Facto* Clause arguably applies only to the retroactive application of a *statute*, not to the purportedly retroactive application of an executive action, as took place here. But even if we were to assume that executive actions are included within the strictures of Article 17, Grandison's claim must fail, as we next explain.

In light of recent decisional law, the test to be applied, in determining whether there has been a violation of Article 17, is unclear, as the Court of Appeals has been sharply divided over that question. But, under either of the tests applied in the most recent

---

[18] Article I, Section 10, clause 1 of the United States Constitution provides:

> No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

decisions by our State's highest Court, there was no *ex post facto* violation in the instant case.

The *Doe* plurality opinion applied the following test, derived from *Kring v. Missouri*, 107 U.S. 221, 235 (1883), and *Weaver v. Graham*, 450 U.S. 24, 29, 33-34 (1981), and previously adopted by the Court of Appeals, in *Anderson v. Dep't of Health & Mental Hygiene*, 310 Md. 217, 224, 226-27 (1987): "[T]wo critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must *disadvantage* the offender affected by it." *Doe*, 430 Md. at 551, 556 (plurality opinion) (internal quotation marks and citations omitted) (emphasis in original). Under that test, it is clear that Grandison cannot demonstrate that Governor O'Malley's commutation of his death sentences to sentences of life imprisonment without the possibility of parole resulted in an *ex post facto* violation, because he obviously did not suffer a *disadvantage* as a consequence of that commutation of sentence. *See id.* at 556; *Woods v. State*, 315 Md. 591, 606-07 (1989) (rejecting "the notion that a life sentence without the possibility of parole is, even relatively, the equivalent of death itself").

The *Doe* dissent would have applied a different test, derived from *Collins v. Youngblood*, 497 U.S. 37, 49-50 (1990) (overruling *Kring*), and *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798): The *Ex Post Facto* Clause prohibits "[e]very law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed." *Doe*, 430 Md. at 582 (Barbera, J., dissenting) (emphasis added) (quoting

*Calder*, 3 U.S. (3 Dall.) at 390).[19]   Under that alternative test, Grandison's claim would still fail, as it is clear that Governor O'Malley's commutation of his sentences obviously did not result in a "*greater punishment*, than the law annexed to the crime, when committed." *See id.* (emphasis added).   Indeed, the result of Governor O'Malley's action was to *reduce* Grandison's sentences.  *See Woods*, 315 Md. at 606-07.[20]

**2.**

---

[19] According to *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798), there are four categories of laws, which violate the *Ex Post Facto* Clause:

> 1st.  Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action.  2d.  Every law that *aggravates a crime*, or makes it *greater* than it was, when committed.  3d.  Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed.  4th.  Every law that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender*.

(Emphasis in original).

Only the third category, enumerated in *Calder*, has any relevance to this case.

[20] Because, under either test for determining whether Grandison's rights under the *Ex Post Facto* Clause have been violated, he cannot demonstrate that the former Governor's commutation of his death sentences, to sentences of life imprisonment without the possibility of parole, resulted in either a disadvantage or a greater punishment, it is immaterial that, at the time of the murders, there was no provision under Maryland law for a sentence of life imprisonment without the possibility of parole.  *See* Md. Code (1957, 1982 Repl. Vol.), Art. 27, § 412(b) (providing that the only possible sentences, following a conviction for murder in the first degree, were death or life imprisonment).  It was not until 1987 that the General Assembly amended § 412(b) to permit a sentence of life imprisonment without the possibility of parole.  *See* 1987 Md. Laws, ch. 237 at 1049-50, codified at Md. Code (1957, 1987 Repl. Vol.), Art. 27, § 412(b).

23

Grandison also contends that the former Governor's commutation of his death sentences was an illegal retroactive application of a statute, CS § 7-601. That contention, like all of the others in these appeals, is without merit.

Notwithstanding the independent constitutional basis for the gubernatorial pardon power, Md. Const., Art II, § 20, that power is also set forth in statutes. The pertinent statutes, for our purposes, are Md. Code (1957, 1982 Repl. Vol.), Article 41, §§ 118 and 119, and their modern-day counterparts, CS §§ 7-601 and 7-602. Article 41, § 118, the statute in effect at the time Grandison committed the murders at issue, provided:

> The Governor upon giving the notice required by the Constitution may commute or change any sentence of death into penal confinement for such period as he shall think expedient. And, on giving such a notice, he may pardon any person, convicted of crime, on such conditions as he may prescribe, or he may upon like notice remit any part of the time for which any person may be sentenced to imprisonment on such like conditions without such remission operating as a full pardon to any such person.

Article 41, § 119, also in effect at the time Grandison committed the murders at issue, further emphasized the plenary nature of the gubernatorial pardon power. It provided:

> In any case in which the Governor may issue a conditional pardon to any person, the Governor, in the absence of any provision to the contrary expressed therein, shall be the sole judge of whether or not the conditions of said pardon have been breached, and the determination by the Governor, that the conditions of such pardon have been violated by the person receiving the same, shall be final and not subject to review by any court of this State.[21]

---

[21] The Court of Appeals, however, interpreted an identical provision, then codified

(continued . . .)

Plainly, under Section 118, the Governor was authorized to "commute or change any sentence of death into penal confinement for such period **as he shall think expedient**." (Emphasis added.) Such a period would obviously include life without the possibility of parole. That point is further confirmed by the provision that the Governor could "remit any part of the time for which any person may be sentenced to imprisonment on such like conditions," that is, "**such conditions as he may prescribe**," "without such remission operating as a full pardon to any such person." Art. 41, § 118 (emphasis added). Clearly, among "such conditions" as the Governor "may prescribe" would have included the condition that a prisoner, like Grandison, being granted commutation of his death sentences, would not be eligible for parole.

Further underscoring the Governor's plenary authority to impose conditions on any pardon he may grant was Section 119. That section, consistent with the Governor's plenary pardon power under Article II, § 20, made clear that the Governor alone is the judge of whether a condition of a pardon has been breached and that such a determination, by the Governor, "shall be final and not subject to review by any court of this State." Art. 41, § 119. In this respect, the instant case is indistinguishable from *Schick*, *supra*, which is highly persuasive authority in interpreting the scope of the Maryland counterpart to the federal constitutional provision interpreted in that case. The *Schick* Court observed that "the pardoning power was intended to include the power to commute sentences on

---

(. . . continued)
at Article 41, § 80, as requiring, under due process, that the Governor, prior to revocation of a conditional pardon, provide the grantee "an opportunity to be heard." *Murray v. Swenson*, 196 Md. 222, 231 (1950).

conditions which do not in themselves offend the Constitution, but which are not specifically provided for by statute[,]" 419 U.S. at 264, and it held that the President was authorized to commute a death sentence to a sentence of life imprisonment, on condition that the grantee not be eligible to seek parole, although, at the time that pardon was granted, no such condition was expressly authorized by law. *Id.* at 260, 267-68.

The modern-day counterpart to Article 41, § 118, is CS § 7-601, which, effective October 1, 2013, provides in pertinent part:

> (a) *In general.* – On giving the notice required by the Maryland Constitution, the Governor may:
>
> (1) change a sentence of death into a sentence of life without the possibility of parole;
> (2) pardon an individual convicted of a crime subject to any conditions the Governor requires; or
> (3) remit any part of a sentence of imprisonment subject to any conditions the Governor requires, without the remission operating as a full pardon.

The modern-day counterpart to Article 41, § 119, is CS § 7-602, which provides:

> (a) *Governor as sole judge.* – Unless the order granting a pardon provides otherwise, the Governor is the sole judge of whether a condition of a conditional pardon has been violated.
>
> (b) *Determination not subject to judicial review.* – A determination by the Governor that a condition of a conditional pardon has been violated by the grantee is final and not subject to review by any court of the State.

Plainly, it is substantially the same as its 1983 counterpart, Article 41, § 119.

Under the plain language of the statutes, the Governor, both under the current statutes and their 1983 versions, was authorized to commute a sentence of death to a

26

sentence of life without the possibility of parole, although the current versions state this proposition more plainly.  It follows, then, that the statutory changes have not resulted in a violation of Article 17, because they have not effected a retroactive change in the law.

**JUDGMENTS OF THE CIRCUIT COURT FOR SOMERSET COUNTY AFFIRMED.  COSTS ASSESSED TO APPELLANT.**